Moale *vs.* Buchanan *et al.*—1840.

SAMUEL MOALE AND OTHERS, *vs.* E. S. BUCHANAN AND OTHERS.—*December*, 1840.

E. (carrying on business under the name of *W. Factory*,) being indebted, pro- posed to his creditors in writing, signed by his agent, as follows : "A deed of trust of all the property to be executed for the payment of such notes already given by said *Factory*," &c., as may be renewed for twelve months, payable afterwards, in monthly payments. This proposal was accompa- nied by another paper, headed, *State of Warren Factory*, and included in its recitals among other property, "*Factory Pratt Street*." It was ac- cepted by some of his creditors, and a deed of trust executed. It appeared that the *Factory Pratt Street*, was situated on *two* lots of ground, which belonged as well to E, as his brothers and sisters; but the deed of trust in which the brothers and sisters united, by mistake omitted one of those lots, contrary to the expectation and intention of the grantors, trustees, and creditors. Before the discovery of this mistake, two creditors of the grantors obtained judgments at law against them, one before, and one after, the date at which the trustees took possession of the *Factory Pratt Street*—upon a bill filed to reform the deed of trust, add the omitted lot, and enjoin the judgment creditors from proceeding at law against that lot. *It was held*, that the judgment creditor who had obtained a lien at law *before* the trus- tees took possession, and without notice of the original contract, might proceed at law to enforce such lien ; but that as the other judgment credi- tor had received a dividend from the trustees, he thereby became an equit- able party to the deed, and could not, under any aspect, enforce his judgment in opposition to the agreement on which the deed was founded. Upon these principles, the deed was decreed to be reformed, in conformity with the ori- ginal contract.

A paper signed by a party proposing to convey all the property, cannot be connected by parol with another paper *not* signed, for the purpose of desig- nating the property designed to be conveyed, and thus escape the prohibi- tions of the statute of frauds.

An agreement to be within the statute of frauds, cannot be partly in writing and partly in parol. It must be entirely in writing, and signed by the par- ties or their authorised agents.

Parol evidence may however so connect two papers, as to be evidence, that they both related to and formed parts of one contract.

An agreement entirely by parol and in part performed, may be specifically executed; part performance taking the case out of the statute of frauds.

So where there was an agreement to convey two lots to trustees for credi- tors, in consideration of indulgence and extension of credit, void under the statute of frauds, taking possession of the property under the contract, and granting the indulgence, is such a part performance of the agreement, as will induce equity to execute it specifically.

Trustees who hold property under a deed for the benefit of c. q. t., have such

an interest, as will enable them to enforce the agreement on which the deed was founded.

It is no objection to the execution of a contract, on the ground of part performance, that it is partly in writing, and partly by parol.

The opinion of *Sir William Grant*, 7 *Vesey Jr.* 217, controverted and denied.

There are many cases, in which parol evidence at the instance of a complainant, may be received to rectify a contract, and execute it specifically as rectified.

A contract which creates a specific lien on real property, has a superior equity to the general lien of a subsequent judgment.

An infant is not bound by his deed.

APPEAL from *Chancery.*

The bill in this case was filed on the 8th day of June 1831, by *Samuel Moale* and *Reverdy Johnson* trustees, and *Robert Lemmon & Co.* and others, creditors on their own behalf, as also on behalf of other creditors of, &c.; and alleged that *E. S. Buchanan*, being the ostensible proprietor of *Warren Factory*, and carrying on trade and commerce under the name of *The Warren Factory*, and being largely indebted unto *R. L. & Co.*, to wit, in the sum, &c., and also to, &c.—for the purpose of gaining indulgence for payment of said claims, and an extension of time for payment thereof, did propose to grant and convey to trustees, all the property hereinafter mentioned, as a security for the payment thereof, and the said proprietors of the said *Warren Factory*, and the persons composing the said trading establishment, made said proposals in writing, dated the 14th day of July 1829, signed by their solicitors and agents, accompanied by a statement in writing, comprising and showing, to the said creditors and your complainants, all the property and effects, which they propose so to grant and convey to the trustees for the said creditors and your complainants as aforesaid, among which said property, are all those *two lots* and parcels of ground, and the Factory and buildings thereon situate in *Pratt* street in the city of *Baltimore*, which proposition, and property mentioned in the said statement which accompanied said proposition, and which proposition, was accepted by your complainant's creditors as aforesaid, and by the other creditors of *Warren Factory* in writing, and the extended credit on the said debts, on the faith thereof actually

granted; but for greater certainty your complainants herewith file a true copy of the said proposition and statement, which they pray may be deemed a part of this their bill of complaint, the original whereof, now in the possession of your complainants, and ready to be produced, &c. Your complainants further state, that *E. S. Buchanan, R. S. Buchanan* and others, for the purpose of inducing the creditors of the *Warren Factory*, to accept the said proposition, and to grant time and indulgence to the said proprietors, and partners of *Warren Factory* according to the terms of the proposition of the 14th July 1829, did agree to grant and convey to trustees aforesaid, certain property which belonged to them individually, and which is mentioned in said statement, and among which are the said lots and factory on Pratt street aforesaid, as a further security for the payment of the claims of your complainant's creditors as aforesaid, and the others, creditors of *Warren Factory*, which security your complainant's creditors and others as aforesaid, creditors of *Warren Factory*, agreed to and did accept in writing. Your complainants further state, that the said *E. S. Buchanan* and others, with the true intent of fulfilling the terms of the said proposition and statement of the 14th July 1829, did by a certain deed of trust, bearing date the 17th day of July 1829, grant and convey to the said *Samuel Moale* and *Reverdy Johnson*, all those tracts of land, lots, &c., *described in the deed of trust*, for the use and trust therein mentioned, &c.; that the *Pratt Street Factory* mentioned in said statement, was built and erected on the following described *two* pieces or parcels of ground, to wit, all that lot, &c., covered with the buildings and improvements, called the *Pratt Street Factory*, and had been before, and at the time of the said proposition of the 14th July, was used as a Factory; that said *Moale* and *Johnson*, the trustees, had actual and entire possession of the said *Pratt Street Factory*, and the lots of ground upon which it was built, on or about the 1st day of October 1830, and on or about the 8th day of October, in the year last aforesaid, had the same insured as property belonging to the trust mentioned in the agreement and deed of trust

aforesaid; that from the date of the said deed of trust, they and the other creditors of Warren Factory, were under the impresssion, *that both the said pieces or parcels of ground on which the said Pratt Street Factory was erected*, had been conveyed by the said deed of trust of 17th July 1829, to the said *Moale* and *Johnson*, according to the terms of the said agreement of the 14th July 1829, and under that impression, the said *Moale* and *Johnson* took the possession of it as aforesaid, with the consent of the said grantors of the said deed, (except *Samuel S. Buchanan*, who objected to the said deed by reason of his minority when he executed the same, and only on that account,) and held the possession thereof until some time on or about the 1st day of December 1830, when the same was sold under a decree of *Baltimore* county court to *H. W. Evans*, and which said sale was afterwards rescinded by said court on account of an outstanding life estate, and the mistake in the said deed as hereinafter mentioned; that by omission, mistake and accident, *one* of the said pieces or parcels of ground upon which the said *Pratt Street Factory* was so erected, to wit, the piece of ground conveyed, &c., was not included by the said deed of trust of the 17th July 1829, as was intended by said grantors, and grantees, but from mistake, accident or omission, was left out of the same, contrary to said agreement of the 14th July 1829, and the contract of the said creditors as aforesaid. Your complainants further state, that *Edmund Didier*, and *the president and directors of the Marine Bank of Baltimore*, creditors of the said *Warren Factory*, have each of them obtained judgments against the said *E. S. Buchanan, Er. S. Buchanan* and *R. S. Buchanan*, in *Baltimore* county court, and have caused four writs of *fi. fa.*, dated on or about the 11th May 1831, to issue on said judgments, and have delivered said writs of *fi. fa.* to the sheriff of *Baltimore* county, to be levied upon all that piece or parcel of ground conveyed as aforesaid, by, &c., No. 756, and the said sheriff on the 31st May 1831, levied said writs of *fi. fa.* on the said piece or parcel of ground, and by virtue thereof, hath actually advertised the said piece or parcel of

ground for sale on the 22nd June 1831, and intends to sell
the same to satisfy said judgment; that *E. S. B.* is dead, and
*E. S. B.* and others, are her heirs at law; that *S. S. B.* is a
minor, and said deed not effective as to him. Prayer for a
conveyance for the ground omitted in the deed of trust, and
for further relief—for an injunction against *the Marine Bank*
and *Edmund Didier,* enjoining further proceedings at law, and
for subpœnas.

With the bill of complaint were exhibited the deeds for the
lots 691 and 756, to *Elizabeth Buchanan,* and also exhibit No.
4, as follows:

R. Proposition on the part of *James A. Buchanan,* as agent
of the *Warren Factory,* a deed of trust of all the property to
be executed for the payment of such of the notes already given
by said Factory, and two borrowed and endorsed by them as
may be renewed for twelve months, payable afterwards in
monthly payments, with a provision, that the present agent is
to have the management of the property, until there be a de-
fault in this agreement, and that such of the creditors as agree
to a trust, are to be first paid, subject of course to the existing
mortgages. *Signed S. Moale, R. Johnson,* for proprietors of
Warren Factory—14th July 1829.

The proposition is accepted, signed by the complainants
and various creditors. Another exhibit filed with the bill was
as follows, viz:

S. State of Warren Factory in July 1829; 8208 spindles
in two cotton mills with, &c., and after enumerating various
articles of personal property, debts, &c., with a valuation of
each, and a statement of annual profits, then dwelling house
$25,000—warehouses in Light street $70,000—Factory Pratt
street $35,000, &c. &c.

Exhibit No. 5, was a copy of the levy under the *fi. fa.* on
lot No. 756, on Pratt street in the city of *Baltimore,* at the
suits of *Edmund Didier,* and *the Marine Bank.*

On the 8th June 1831, the Chancellor, (BLAND,) ordered
subpœna and injunction as prayed by the bill.

The answer of *E. S. Buchanan, Robert S. Buchanan, Wil-*

*liam B. Buchanan* and wife, admitted that *E. S. Buchanan,* deceased, was the proprietor of the Warren Factory, carrying on trade under that name; was indebted to the complainants and others; that *J. A. Buchanan* was the general agent of said Factory; that the Warren Factory, being unable to meet its engagements for the purpose of obtaining indulgence for payment of the said debts, and an extension of time for payment, did propose to grant and convey to trustees, all the property thereinafter mentioned, as a security for the payment of said claims, and the said proprietor of *Warren Factory* made said proposal in writing, dated on the 14th July 1829, signed by the said *Samuel Moale* and *Reverdy Johnson,* their solicitors and attorneys, acting for them, and which said written proposals was accompanied by a statement in writing, comprising and showing to the said creditors and complainants, all the property and effects which they proposed to convey to trustees, for your said complainants, and the other creditors of the *Warren Factory;* and these defendants admit, that the said proposal and statement of property were accepted by the said creditors; and the extended credit on the said debts actually given; that the proposal, statement and acceptance, filed with the bill are true copies; they admit, that the lots of ground, and factory and buildings thereon situate on *Pratt* street, were proposed to be given to said trustees, and were included in the statement accompanying the written proposals as an inducement to the said creditors to accept said proposal, and grant the indulgence asked for by the *Warren Factory;* that these defendants for the purpose of inducing the said complainants's creditors aforesaid, and the other creditors of the *Warren Factory,* to accept the said proposal of the 14th July 1829, and to grant time and indulgence to said proprietors of *Warren Factory,* did agree to grant and convey to trustees, certain property which belonged to them individually, and which is mentioned in said statement, and among other property the said lots of ground, buildings and Factory on *Pratt* street aforesaid, mentioned in the said bill of complaint, as a further additional security for the payment of said debts or

claims, and which was accepted as aforesaid; that for the purpose of complying with their said agreement, and in fulfilment of the terms of the said proposal and statement of the property therein mentioned, did by their certain deed of trust of the 17th July 1829, grant and convey to the said *Samuel Moale* and *Reverdy Johnson*, all the land therein mentioned; that the *Pratt street Factory* mentioned in said statement, was built and erected on the said *two* lots or parcels of ground mentioned in said bill, to wit, &c.; that before the 14th July 1829, the said two lots were so built upon and used, and that said trustees took possession on or about the 1st October 1830; that these defendants were under the impression and always believed, that the said *Pratt street Factory*, and the said lots of ground on which the same is erected, had been conveyed by the deed of trust of 17th July 1829, to said *Moale* and *Johnson*, according to the terms of said proposal, and the said complainant's creditors and other creditors, were under the like impression and did so believe, and that the omission to include it arose from accident and mistake upon the part of the grantors of said deed of trust. The answer saved throughout, the interest of *S. S. Buchanan*, arising from his infancy and dissent, and also admitted the judgments of *E. Didier* and *the Marine Bank of Baltimore.*

The answer of *the Marine Bank*, denied the making of the proposition on behalf of the *Warren Factory* to its creditors, or that it was accompanied by any statement in writing, as set forth in the bill; or that the said two lots were included, or that said proposition was accepted by all the creditors of said *Factory*. That answer admitted the deed of trust, but denied, that *E. S. B.* and others, intended to do more than execute said deed, and that the *Factory* did not cover the said two lots. The defendants do not know, and cannot admit, that the said *Moale* and *Johnson* had possession of said property, and denied the alleged accident or mistake. The answer also admitted the minority of *S. S. B.*, and their judgment against the grantors of the deed of trust; the levy under *fi. fa.* and design to sell; that said deed as to them is *void*,

and will not be enforced in equity.	That as creditors subsequent to that deed without notice, they have a vested right in said property, and claim to enforce their judgment, &c.

The answer of *Edmund Didier,* set up various objections to said deed, but as those defences were not considered by the Court of Appeals, it is not deemed necessary to insert them further than as disclosed above in the answer of the *Marine Bank.*	This defendant claimed as a judgment creditor.

The answer of *S. Smith Buchanan,* admitted the intention to convey both lots by his co-grantors, but relied on his infancy as a bar to any recovery against him.

On the 23rd February 1833, upon the petition of the complainants, the Chancellor (BLAND,) authorised the examination as witnesses for the complainants of *E. S. Buchanan, R. S. Buchanan* and *W. B. Buchanan,* subject to all legal exceptions.

A commission was issued, under which a variety of proof was returned.	The complainants proved their deed of trust, and offered evidence of the omission and mistake.	The judgment of the Marine Bank was rendered the 7th October 1830, and was against *R. S. Buchanan* and *E. S. Buchanan.*	That of *Didier* was dated 1st April 1831, and against the same parties.	It was admitted, that *E. Didier* had received from the trustees, *Moale* and *Johnson,* the dividend on his claim equally with the other creditors of the trust fund—19th May 1834, $1,321.37, 13th June 1834, $333.46.

At March 1839, the Chancellor (BLAND,) dissolved the injunction and dismissed the bill, being of opinion, that the alleged mistake as set forth in the bill, was not sustained by proof sufficiently strong and clear; that the deed of 17th July 1829, cannot be corrected to the prejudice of the defendant creditors, who were not shown to have had notice of its having been executed under any mistake, and that if it were corrected as prayed, so as to embrace an additional amount of property, it could not be deemed valid and available against the defendant creditors, who are not shown to have assented to, or become parties to it.

41			v.11

The complainants appealed to this court.

The cause was argued before STEPHEN, ARCHER, DORSEY, CHAMBERS, and SPENCE, J.

By N. WILLIAMS, S. MOALE and R. JOHNSON for the appellants, and
By McMAHON and RICHARDSON for the appellees.

ARCHER, J., delivered the opinion of the court.

There is no agreement in writing within the statute of frauds for the transfer of any lands to trustees in this case. The proposal R designates no land, or property to be conveyed. It proposes to convey all the property, without designating what property. To make it an agreement within the statute of frauds, it cannot be connected by parol evidence with schedule S. An agreement to be within the statute of frauds, cannot be partly in writing, and partly in parol. It must be entirely in writing, and signed by the parties to be charged, or their authorised agents, and if proposal R, had referred to schedule S, without further explanation, it would have been difficult for both conjointly to have said, that the parties had agreed to convey all the property in schedule S, to trustees; because that paper contained a schedule of other property, than property owned by the Factory, and the proposal R, was only made in behalf of the Factory. The parol evidence however, when connected with proposal R, and schedule S, leaves no doubt on our minds, but that it was agreed between the *Warren Factory*, and the owners of the city property, (including the *Pratt street Factory*, embracing both lots, as well the lot included in the deed of 17th July 1829, as the lot excluded,) and the creditors of the *Warren Factory*, that all the property in schedule S, should be conveyed to the creditors of *Warren Factory*, if they would grant the time asked for in proposal R, to meet the responsibilities due them.

It is clear in our minds, that it was not the design of the parties to reduce the entire agreement to writing. The proposal R, was made to show the terms of the deed, and the extent of indulgence asked.

The schedule S, was made to show the general condition of the Factory, so as to induce the creditors to grant the indulgence, and what property, individual and otherwise, was intended to be conveyed; but it was unintelligible, without oral explanations, as to the property intended to be conveyed. Besides, it is in proof, that the individual owners of the city property had agreed to convey the property mentioned in the schedule, but neither proposal R, or schedule S, refer in any manner to their agreement; nor are they in any manner bound by any thing contained in either paper; yet the parties acted throughout on the writings, and oral agreement.

The agreement then exists, partly in writing, and in partly parol. If the agreement were entirely in parol, and were in part performed, it would be specifically executed; the part performance taking the case out of the statute of frauds.

Now has there been such a part performance here? The deed was executed on the 17th July 1829, and the proof is, that possession was delivered, as well of the property included in the deed, as the property omitted, about the 1st October 1830; and that on the 8th October 1830, insurance was affected thereon.

Possession to be available must be in part performance, and must be referrible to the contract, and not to a distinct title. *Sugden,* 136. It is true the trustees took possession in virtue of the deed, but all parties believed, that the deed was in pursuance of the contract, so that the possession taken by the trustees, was both under the deed and the contract. The trustees were not named in the written proposition, but were agreed upon by the parties, and the deed having omitted the controverted lot through mistake, when they obtained possession, Chancery would consider them in possession under the contract, holding an interest therein, as trustees, for the benefit of the *cestui que trust,* and having an interest in the enforcement of such contract. We conclude therefore, that the part execution was referrible to this contract, and not to a different or distinct title.

But the agreement was partly by parol and partly in writing.

That can make no difference where part performance is relied upon, as is clear upon authority. 14 *John*. 33. 3 *Bro. Ch*. 149. 1 *Scho. & Lef*. 37, and there would be reason for giving as much, if not more weight, to evidence partly in writing, than if it were all by parol, because a greater probability of truth and certainty.

As to the mistake in the deed of July 17th, there can be no doubt. It is proven, that the grantors all agreed to convey the property left out of the deed ; that the creditors acted upon the faith that it would be conveyed. That the parties believed it had been conveyed; that the grantors delivered it over with the other property to the trustees, and that it was sold under a decree of a court of equity at the instance of the trustees, and that while in their possession it was insured, and that the mistake was not discovered until the purchase under the decree disclosed the fact. All these facts prove the mistake so clearly as to leave us no room to entertain a doubt about the matter.

The parties have ineffectually attempted to execute this contract, the deed of 17th July having left out a part of the property agreed, and intended to be conveyed by the mistake, to which we have adverted, and the complainant's seek to rectify the mistake, and specifically enforce the agreement. It is supposed, that by the established principles of Chancery, this object is not attainable; and that the evidence ought not to be let in, to show the mistake in the executed contract, where the complainant is seeking to enforce the contract; because it would controvert the statute of frauds, and charge a party with the sale of lands by an agreement not in writing; but if the party have so far executed the contract, by putting the complainant in possession, so that it would be a fraud upon them, to insist that their agreement was not in writing, a case is presented not within the statute of frauds, so that the statute is not contravened by letting in the evidence, and such it would seem was the opinion of *Lord Redesdale*, who although he held the doctrine that a complainant on a bill for a specific performance of a contract in relation to land, could not offer evidence of a mistake in the agreement, and have it executed

as rectified, still thought that the contract might be executed, where there was such a part performance as took the case out of the statute. 2 *Scho. & Lef.* 39. Had the agreement been entirely by parol, and a part performance, the complainant would have been entitled to relief. Shall he be in a worse situation by having attempted to reduce the whole agreement into the form of a conveyance, if he shall make an omission in the conveyance, by mistake of an essential part of the agreement? This is not the case of a party resting solely on a written contract for the sale of lands, and who seeks to reform it by parol, and as reformed to have it executed. But the complainant rests on possession, amounting to such a part performance, as withdraws his case from the operation of the statute, and then there would be nothing to distinguish it from the ordinary case of a complainant going into Chancery to reform a contract on the ground of mistake. In 7 *Ves.* 217, *Sir William Grant* however, declares, that though the instrument does not contain the terms, it must in contemplation of law be taken to contain the agreement, and that parol evidence of mistake or fraud can only be offered by a defendant to rebut an equity; but that it cannot be offered by a plaintiff, *first* to falsify the instrument, and then to substitute an agreement to be executed by the court. He seems to consider it a universal principle, applicable to all cases of agreements, whether under the statute of frauds or not. This doctrine has been repudiated in this country by *Chancellor Kent*, who has shown many cases in the reports, where the complainant has been permitted to offer parol evidence of mistake, and where the instruments have been rectified. 2 *John. Ch.* 599.

*Henkle vs. Royal Exchange Assurance Company. Baker vs. Paine*, 1 *Ves.* 456. 1 *P. W.* 60. 2 *Atkins* 31. *Prece. in Ch.* 309. 3 *Ves.* 356, 2 *Ves.* 377, 5 *Ves.* 601, 1 *Ves.* 400. 2 *P. W.* 464. *Dick.* 294. 5 *Ves.* 593, 2 *Ves.* 565. 1 *Eq. Ca. Abr.* 820, *Pla.* 1. 1 *P. W.* 279—and he accordingly received parol evidence, at the instance of the complainant, rectified the contract, and specifically executed it. 2 *John. Ch.* 535. 4 *John. Ch. Rep.* 144. These opinions of *Chancellor Kent*

have met the decided approbation of *Mr. Justice Story*, as will be seen by reference to his commentaries, 1 *Vol.* 175, *note* 1. In these opinions we accord, perceiving no just reason why the evidence should be admitted to rebut an equity, and not be received to enforce an equity.

Possession was delivered to the trustees about the first of October 1830. *Didier* recovered judgments against *E. Buchanan* and *R. Buchanan*, in April 1831. *Didier* issued a *fi. fa.* on this judgment, and levied it on the lot in controversy, and the question arises, whether the equity of the complainants is not superior to his. If there were no evidence in the cause, calculated to shew that he had assented to the contract and deed of trust, we still think, the equity of the complainant the superior equity, as a judgment creditor he had no specific lien on the property. But the creditors acquired a specific lien in virtue of the contract and the delivery of possession under it to the trustees. If *Didier* acquired a lien in virtue of the *fi. fa.* and *levy* thereon, it was subsequent to the lien of the complainants. But there exists other grounds upon which he must be postponed to the complainants. He has in fact made himself a party to the deed. He has accepted a dividend with the rest of the creditors; and having done so, must be considered as affirming the deed, and the contract upon which it was executed. A contrary opinion would give him an unconscientious advantage over the other creditors; on this branch of the subject he might have placed himself in a more favourable attitude, had he when seeking to enforce his judgment, offered to surrender the dividend acquired under the deed, if in truth he had never been a party to the contract or deed.

With regard to the right of *the Marine Bank* to resist the specific execution of this contract, we remark, that the complainant dates his equitable interest in the controverted lot from one of two periods, first, from the day where possession was delivered to the trustees, or secondly, from the date of the deed of 17th July 1829. If from the former period, the complainants have no priority, for as they are seeking to defeat the lien of *the Marine Bank*, the *onus* lies on them to show that the

judgment was posterior to the date of the delivery of possession. This should be clearly shown to the court before we could enjoin the execution on the judgment of the Bank. Now the judgment of the Bank is proven to be on the 7th of October 1830, and the date of the delivery of possession is uncertain; it is stated to be *about* the 1st of October of that year. This is too uncertain; it may have been on any day from the first to the eighth of October inclusively, and still *be about* the first of October. If the equitable interest of the complainant existed cotemporaneously with the deed of July 17th, still it was a latent and secret equity unknown to the Bank, or not proven to be known to them, until after the rendition of the judgment in favour of the Bank.

Objections have been taken to the contract and deed, and it is alleged, they are both fraudulent and void. It becomes unnecessary to determine this question, because they are valid in any aspect *against parties thereto, and Didier*, who by his acceptance of dividends under the deed, has become a party thereto. Having determined that *the Marine Bank*, having a preference, has liberty to pursue her execution against the controverted property, there is nothing in her case which would demand of us a judgment on the validity or invalidity of the contract or deed.

From what we have said in the former part of this opinion, it will be observed, that we consider *Messrs. Moale* and *Johnson* as interested in this contract, and of course in its enforcement, and therefore do not consider there is any objection on the ground of parties.

We therefore think that relief should be decreed to the complainants to the extent of their prayer, except as against *S. S. Buchanan*, who was an infant at the date of the deed and contract, and except as against *the Marine Bank*, in relation to which, the injunction heretofore issued, should be dissolved, and the said Bank and the said *S. S. Buchanan* should be allowed their costs in the Court of Chancery and in this court.

DECREE REVERSED IN PART AND CAUSE REMANDED.