ANDREW HALL AND WIFE *vs.* CHARLOTTE HALL AND OTHERS. *December* 1843.

It is a general rule that, if the answer to a bill denies the existence of *any* parol contract for the sale of lands, and insists upon the benefit of the statute of frauds, the case cannot be made out by parol proof, and the bar of the statute is complete : but there is an exception to this rule, resulting from a part performance of the contract, established by many decided cases.

The evidence of part performance of a parol contract for the sale of lands, in the delivery of possession, or payment of purchase money, need not to be in writing, where such evidence is admissible as acts of part performance, to take a case out of the statute of frauds.

The statute of frauds was designed to exclude oral evidence of the agreement of sale ; not oral evidence of the acts of part performance, or things done in execution of the agreement.

Where a complainant relies upon acts of part performance, to take a parol agreement for the sale of lands, (denied by the answers,) out of the operation of the statute of frauds, it is his duty to offer full and satisfactory evidence of the terms of such agreement, and of the performance of it on his part, to entitle him to a decree for specific execution.

APPEAL from the Court of Chancery.

The amended and supplemental bill in this cause was filed on the 6th July, 1836, by the appellants, and alleged that in the year 1815, *Aquila Hall* died, having executed his last will,

whereby he devised to his widow, *Ann Hall,* for life, a valuable real estate and some personal property; after the decease of his wife, remainder to his daughters, *Charlotte* and *Maria Hall,* in fee. The will also contained various devises of specific parcels of real property to his children respectively, except *Delia,* who had intermarried with a certain *Philip Moore,* and his son, *Edward C. Hall;* and to *Delia Moore* he devised $5,000 out of certain real estate directed by his will to be sold, and the residue of the money arising from such sale to be applied to the use of his son *Edward C. Hall.* A copy of the will was exhibited with the bill of complaint.

The bill then alleged, that the real estate, when sold, produced nothing for *Edward,* who was in fact left unprovided for, and that in order to equalise the bequests of said testator, and to prevent an entire failure of his intentions, and wishes in respect to the said *Edward,* his mother, the said *Ann Hall,* and his sisters, the said *Charlotte* and the said *Maria,* to whom the largest and most valuable parts of the testator's estate were devised, agreed to give, and did give, to him the said *Edward,* the lands and premises particularly mentioned and described in the original bill in this cause, and placed him in possession thereof as the absolute owner in fee; that the said *Edward* had in actual possession, used, enjoyed and claimed as sole owner, for many years, the said land and premises, under and in virtue of the said gift, and that while he was so possessed thereof and holding himself out to the public as the absolute proprietor, to wit, during the year 1825, he sold the lands and premises to the said *Philip Moore,* for a valuable consideration, to wit, $4,000, and received from said *P. M.,* at various times, the whole amount of purchase money; and the complainants charged that the said sale was made with the knowledge, acquiescence and assent of the said *Ann, Charlotte,* and *Maria,* and that they were apprised of the consideration and payment of the purchase money by said *Moore,* and acquiesced in the same; that in the year 1825 the said *E. C. H.* transferred on the public records of the levy court or commissioners of *Baltimore* county the said lands and premises to *P. M.,* and that

the said *Moore* had before been and was then placed in the quiet possession of the said estate, and always afterwards, up to the period of his decease, continued peaceably to possess and enjoy the same, and to pay all the county taxes and assessments thereon ; and they expressly charge that at no time during the said possession of said estate by said *Edward,* or at the time he transferred the possession thereof to the said *Moore,* or afterwards, during the life of the said *Moore,* did either the said *A. C.* or *M.,* or either of them, ever claim the said estate, or pretend to have any title thereto, or in any manner question the validity of the said *P. M.'s* purchase, but on the contrary the said *A. C.* and *M.* all promised and agreed to convey the said estate to the said *P. M.* The bill then proceeded to allege various other circumstances, resting on parol proof, by which the title of the said *P. M.* had been virtually admitted by the defendants, and alleged his death intestate, the wife of the complainant *Andrew,* being *his only* child. The bill prayed for a discovery and conveyance from the appellees, and for general relief.

The answer of *Charlotte* and *Maria Hall,* denied that they, or either of them, or *Ann Hall,* their mother, ever gave, or agreed to give, the said lands and premises to the said *Edward C. Hall,* with the views alleged in the bill, or "on any account whatever," or that they ever placed him in possession as absolute owner ; that he never held or owned the lands in that character, nor claimed them as, or held himself out to be, absolute owner thereof. They deny that he ever attempted to sell, or sold, the said lands to *P. M.,* or that the said *P. M.* ever paid him any money on that account. The answer also denied knowledge, assent, or acquiescence, as imputed to them in the bill. They allege that *E. C. H.* had only possession for two years as tenant of *Ann Hall,* upon whose death the possession of the said lands vested in these defendants, and has so continued ever since. The answer also denied any agreement to convey to *P. M.,* or that he was ever in possession, with their consent.

*Hall and wife vs. Hall et al.—1843.*

The answer of *Edward C. Hall,* corresponded in substance with the answers of his sisters, *C.* and *M.*

On the 21st April, 1842, the Chancellor, (BLAND,) after much testimony taken, on which the cause had been argued before him by the defendants, being of opinion that there was "no proof of any written agreement, nor any evidence of an adequate part performance of any parol contract for the conveyance of the real estate in the proceedings mentioned from the defendants, or any of them, to the ancestor of the plaintiff, *Ann G. Hall,*" decreed that the bill be dismissed with costs.

From this decree the complainants appealed to this court.

The cause was argued before STEPHEN, DORSEY, CHAMBERS and SPENCE, J.

By N. WILLIAMS for the appellants, and
By W. SCHLEY and R. N. MARTIN for the appellees.

DORSEY, J., delivered the opinion of this court.

The first point relied on by the appellees is not disputed, and on an inspection of the record, is a self-evident proposition. It simply asserts, "that there is no proof of any written agreement for the conveyance of the real estate, mentioned in the said proceedings, by the appellees to *Philip Moore,* the ancestor of *Ann G. Hall,* one of the appellants."

The second point on which one of the solicitors of the appellees has very confidently relied is, "that the existence of any parol agreement for the conveyance of the said estate, as alleged in the bill of the appellants, being denied by the appellees in their answer to the said bill, and the appellees having insisted on the benefit of the statute of frauds, the statute constitutes a complete bar to the relief prayed for by the bill, and that it was not competent for the appellants to make out a case by parol evidence."

To sustain this proposition, which if sustainable, would interpose an insuperable bar to the relief sought by the bill, several authorities have been cited ; but that most strongly pressed upon the court, is the general rule upon the subject, stated by

*Justice Story in the 2nd vol. of his Equity Jurisprudence*, 60, *sec.* 758, where, in speaking of the validity, in a court of equity, of a parol agreement for the sale of land, &c., under the 4th sec. of the statute of frauds, he says, "it follows from what has been already said, that if the answer denies the existence of any parol contract, and insists upon the benefit of the statute, the case cannot be made out by parol evidence; and that the bar is complete." In thus stating a general rule applicable to the operation of the statute, to impute to the learned commentator a design to overrule all the cases that established an exception to the rule resulting from a part performance of the contract, would be doing him great injustice. Such exception being upon authority as universally recognized and sanctioned as the general rule which he so clearly announced. And that such was not his meaning and intention, is obvious from his succeeding section, (No. 759,) which he commences by saying: "In the next place, courts of equity will enforce a specific performance of a contract within the statute, where the parol agreement has been partly carried into execution. The distinct ground upon which courts of equity interfere in cases of this sort, is that, otherwise one party would be enabled to practice a fraud upon the other; and it could never be the intention of the statute to enable any party to commit a fraud upon another with impunity. Indeed, fraud in all cases constitutes an answer to the most solemn acts and conveyances, and the objects of the statute are promoted instead of being suppressed by such a jurisdiction for discovery and relief." Upon all principles of fair construction, therefore, the reverse of the doctrine contended for as aforesaid, by one of the solicitors of the appellees, is established by the sections of the commentaries of *Justice Story*, to which we have referred. And no support whatever is given to the position thus insisted on for the appellees, by any of the authorities referred to as sustaining it, unless it be the case of *Givens vs. Calder*, 2 *Desausure*, 190; to the doctrines of which case, (as applicable to the case before us,) if rightly interpreted by the solicitor of the appellees, we announce our unqualified dissent, regarding

them as in conflict with all the established adjudications upon the subject. In the case of *Givens vs. Calder*, the vendor and vendee were dead, and the complainants were the contracting agent of the vendee and his wife, who was the residuary devisee of the purchaser. The respondent, the heir of the vendor, did not deny the agreement alleged, but his knowledge of it, or the assent of the vendor to the delivery of the possession, and says he therefore cannot admit it and pleads the statute of frauds. *Chancellor Rutledge*, who delivered the opinion of the court, says: "we are clearly of opinion, that in the case of a parol agreement, not tinctured with fraud, if the defendant chooses to avail himself of the statute, it is not necessary that he should by answer confess or deny the agreement, the law having declared it void. Neither ought he to be compelled to confess or deny part performance of it, although charged in the bill. That to permit parol evidence of a parol agreement, would be in effect to repeal the statute, and introduce all the mischief, inconvenience and uncertainty it intended to prevent. That to admit parol proof of part performance of a parol agreement would be equally improper, and is not warranted by any of the cases in the books; for it is clearly held, that if the part performance alleged, be possession of land or the payment of money, the complainant must prove delivery of possession in the first case, or receipt or written evidence of payment in the other, to entitle him to a specific execution of the agreement. All the parol testimony, therefore, which has been adduced in the case to prove the parol agreement, or the part performance of it, is made inadmissible, and must be laid aside." "The case thus standing without proof on the part of complainant, the facts of part performance, namely, payment of part of the purchase money, and delivery of possession not being admitted, but denied by the answer as fully and explicitly as defendant could do so, the bill must be dismissed with costs."

If in this opinion the court meant to assert, that by the statute of frauds the evidence of part performance of a parol contract, in the delivery of possession or payment of the purchase money must be in writing, to such an assertion we cannot

yield our assent. From the very nature of the act of deliver-ing possession, written evidence of it rarely, if ever, exists. It is in its nature a matter *in pais*, of which written evidence is not to be predicated. The admission or denial by the an-swer, of the acts of part performance, does not affect or in any wise change the statutory bar to the relief prayed. The sta-tute was designed to exclude oral evidence of the agreement of sale, not oral evidence of the acts of part performance or things done in execution of the agreement. The payment of the purchase money stipulated by the contract may be proved by oral testimony, as well where the agreement is reduced to writing, as where it rests wholly in parol. In reference to the proof, by which such payments are to be established, the sta-tute referred to has made no provision. The same may be said of the act of part performance, by the delivery of pos-session, or of the expenditures made, or improvements erected in virtue of the agreement.

To refer to authorities to shew that courts of equity will decree the specific performance of an oral agreement, on the ground of part performance, may well be regarded at this day as an useless waste of time; but as the contrary doctrine, as applicable to the circumstances of the case, has been so confi-dently urged by one of the solicitors of the appellee, it may not be out of place, perhaps to advert to a few of such authorities. 1 *Fonb. Eq.*, *ch.* 3, *s.* 8, 153, in commenting on the statute and the decreeing of the specific execution of verbal contracts, states that, "so if it be carried into execution by one of the parties, as by delivering possession, and such execution be accepted by the other, he that accepts it must perform his part; for where there is performance the evidence of the bargain does not lie merely upon the words, but upon the fact perform-ed, and it is unconscionable that the party that has received the advantage should be admitted to say, that such contract was never made."

In *Roberts on Frauds*, 131, it is stated, that the relief against the statute in the cases of part performance was originally founded on fraud.

In *Phillips vs. Thompson*, 1 *John. C. C.* 132, *Chancellor Kent* says, "the ground of the interference of the court is not simply that there is proof of the existence of a parol agreement, but that there is fraud in resisting the completion of an agreement partly performed;" and in *Hamilton vs. Jones*, 3 *G. & J.* 127, this court have said, "the ground upon which Chancery interposes its aid, in the case of a clear part performance of a verbal agreement, is, that to withhold relief would be to suffer a party seeking to shelter himself under the statute of frauds, himself to commit a fraud."

This doctrine of decreeing the specific execution of verbal contracts, in part performed, is also fully recognised and established by *Lindsay vs. Lynch*, 2 *Sch. & Lef.* 1. *Morphett vs. Jones*, 1 *Swanst.* 172. *Frame vs. Dawson*, 14 *Ves.* 386. *Ex-parte Hooper*, 19 *Ves.* 479. *Caldwell and others vs. Carrington's Heirs*, 9 *Peters*, 86. *Phillips vs. Thompson*, 1 *John. C. C.* 132. *Graham and wife vs. Yates and Meyer's Heirs*, 6 *H. & J.* 229; and *Moale and others vs. Buchanan and others*, 11 *G. & J.* 314, and a host of other cases, almost without number, to which it is unnecessary to refer.

It was insisted by the appellee's solicitor that the specific execution of a parol agreement had in no case been decreed where, by the answer, the fact of the agreement was denied, and the statute pleaded. A reference to the authorities will at once shew that this position cannot be sustained.

In *Morphett vs. Jones*, 1 *Swanst.* 172, the bill was filed for the specific performance of an oral contract for a lease of land for twenty-one years. The answer denied the agreement, also the acts charged to have been done in part execution of the agreement, and pleaded statute of frauds. The master of the rolls decreed the specific performance of the contract, and in delivering his opinion says, "the plaintiff has established a parol agreement in part performed."

A party, who has permitted another to perform acts on the faith of an agreement, shall not insist that the agreement is bad, and that he is entitled to treat those acts as if it had never existed. In *Caldwell and others vs. Carrington's Heirs*, 9 *Pe-*

*ters*, 86, the bill sought the specific performance of a verbal contract in behalf of one who had partly performed. The answers denied the contract and pleaded the statute of frauds. The specific performance was decreed. *Chief Justice Marshall*, in delivering the opinion of the court, saying: "if, therefore, it be clearly shewn what the agreement was, and that it has been partly performed, that is, that an act has been done, not a mere voluntary act, or merely introductory or ancillary to the agreement, but a part execution of the substance of the agreement, and which would not have been done unless, on account of the agreement, an act, in short, unequivocally referring to, and resulting from, the agreement, and such that the party would suffer an injury, amounting to fraud, by the refusal to execute that agreement, in such case the agreement will be decreed to be specifically performed." And the reverse of the doctrine insisted on by the solicitor of the appellees is clearly conceded or admitted by necessary implication, in the cases of *Lindsay vs. Lynch*, 2 *Sch. & Lef.* 1. *Frame vs. Dawson*, 14 *Ves.* 386, and in the cases decided by this court of *Graham and wife vs. Yates and Meyer's Heirs*, 6 *H. & J.* 229.

No principle is better settled, than that by no device or form of proceeding or solemnity of the instruments, or means used for its perpetration or concealment, can you deprive a court of equity of the power of "unkennelling a fraud." To permit a defendant, when charged with fraud, to shield himself from a disclosure by a denial of the agreement, and pleading the statute, would be to cloak or conceal a fraud, by means of a perjury. And if such a proceeding were tolerated, instead of its being "a statute for the prevention of frauds and perjuries," it might not inaptly be termed a statute for the encouragement of frauds by the rewarding of perjuries. But, says the solicitor of the appellees, conceding that cases may be found where a specific performance has been decreed, notwithstanding the denial in the answer, of the parol agreement charged, and of the acts of part performance alleged, and the plea of the statutory bar, yet no case can be found in which relief has been granted, where the point on which he now relies was distinctly presented for the

determination of the court.   It may, with equal confidence, be asserted, that no case can be found in which a court of equity refused relief in such a case, sustained by adequate proof, upon the objection being raised which is now relied on.   Indeed, notwithstanding the elaborate research made by the solicitor, he has not been able to find a case where, even in the argument of counsel, such a defence has ever been presented to the consideration of a Court of Chancery.   The natural inference from which is, that, until the present occasion, it never was deemed by counsel an available defence.   The only case which can be regarded as giving even a momentary countenance to such a principle, is that before referred to in 2 *Desau.* 190, where such a question did not necessarily arise, as in the opinion of the court there, the act of part performance charged, in relation to the delivery of possession to the vendee, was unsustained by proof.

This preliminary objection to the powers of the Court of Chancery to grant any relief to the appellants (no matter what may be their proof,) being disposed of, our next inquiry is, are the appellants upon the case, as established by proof, entitled to the relief they have sought?   To sustain such title, they must surmount double the difficulties ordinarily encountered by a vendee seeking the specific execution of a parol contract by the vendor, on the ground of part performance.   They must not only shew the contract made between *Edward Hall* and *Philip Moore,* and such acts in part performance thereof, as would entitle them to its specific execution, but they must shew themselves entitled to a conveyance from the appellees, *Charlotte* and *Maria Hall,* under the parol gift, alleged to have been made by them to *Edward Hall.*   That *Edward Hall,* at the time of his alleged sale to *Philip Moore,* had made no such expenditures or improvements on the lands in controversy, or done any such acts in relation thereto, as would, as far as is disclosed by the testimony, entitle him to a decree for a conveyance from *Charlotte* and *Maria Hall,* is, we think, a proposition too clear to require, in its support, either argument or authority.   *Philip Moore,* by his purchase, at the date thereof, acquired in the

lands no greater interest or superior rights than those possess-
ed by *Edward Hall.* The proof in the cause does not shew
that *Charlotte* and *Maria Hall* were present at the time of sale,
assenting thereto, or that any such assent had been previously
given; nor does it shew any such expenditures or improve-
ments on the lands in question as would make it a fraud on
the part of *Charlotte* and *Maria Hall* to withhold a conveyance
thereof under the alleged parol gift; nor indeed, does the bill
filed in this cause charge the making of any such expenditures
or improvements.

But suppose it were conceded that the gift made to *Edward
C. Hall* was binding on *Charlotte* and *Maria Hall,* and that in
virtue of it he could, in a court of equity, have compelled them
to convey to him, have the appellants offered that full and sa-
tisfactory evidence of the terms of the agreement, and of its
performance on their part, as to entitle them to a decree for its
specific execution? It must be borne in mind that *Edward C.
Hall,* by his answer, denies all the allegations in the bill in
relation to the contract, or that any portion of the alleged pur-
chase money was ever paid him by *Philip Moore.* Not a wit-
ness in the cause states what, by the terms of agreement, was
the amount of purchase money stipulated to be paid. The
only two witnesses deposing upon this subject are, first, *Wil-
liam F. Giles,* who said that *Edward C. Hall* stated to him
that "*Philip Moore* had paid him four thousand dollars, but
deponent cannot recollect, at this time, on what account he
stated the said sum of money was paid him by *Mr. Moore;*
and he stated in said conversation that *Mr. Moore* did not owe
him any thing; since that he had made a verbal claim, and
accounted for the inconsistency, by stating that his claim was
for the interest due him on some legacy under his father's
will."

The second witness is *James C. Gittings,* who states that
*Edward Hall* told him "that it was true that he had sold said
farm to *Mrs. Moore,* and that he had received from said *Moore,*
a part, but not all, of the purchase money." If the testimony
of these two witnesses stood unexplained by any other testi-

mony in relation to the said payment of four thousand dollars, it might well be doubted whether it would be deemed sufficient evidence to over-rule the positive denials in the answer, and to prove payment of the entire purchase money. But when we advert to the fact that no proof has been offered to show that four thousand dollars was, by the alleged agreement, the price at which the land was sold, and that it is undeniably proved, that under the will of *Aquila Hall, Philip Moore* was bound to pay *Edward C. Hall* four thousand dollars, the insufficiency of the proof to over-rule the answer is most apparent. Nor does this proof, for such a purpose, derive any aid from the numerous orders, checks and receipts which have been exhibited to establish the payment of four thousand dollars by *Moore* to *Edward C. Hall.* . Indeed, they rather disprove, than prove, that such payments were made on account of the purchase money for the land—a portion of them having been made a year or years before the time of the alleged sale to *Moore,* and not a receipt given for any of them, giving the slightest intimation that the payment was made on account of purchase money due for land sold. Having failed to establish the payment of the purchase money for the land alleged to have been sold, the Chancellor could not have done otherwise than refuse to the appellants the relief sought by their bill. His decree is therefore affirmed with costs.

**DECREE AFFIRMED WITH COSTS.**