PHILIP A. SMALL ET AL.
vs.
CHARLOTTE C. D. OWINGS
AND RICHARD GREEN.

DECEMBER TERM, 1848.

[AUTHORITY OF AGENT—PLEADING—ALLEGATION OF PART PERFORMANCE—SPECIFIC PERFORMANCE—STATUTE OF FRAUDS.]

THE authority of an agent to make an agreement for his principal, need not be in writing.

Where a party sets up an agreement in his bill, invalid under the statute of frauds, and the defendant by his answer, denies the agreement, it is not, perhaps, necessary for him to insist upon the statute as a bar ; but, the complainant at the hearing, must establish the agreement by written evidence.

If the defendant admits, in his answer, the parol agreement, without 'insisting on the statute, the court will decree a specific performance, upon the ground that the defendant has thereby renounced the benefit of the statute.

The principles that regulate equity pleadings, will admit a different interpretation sometimes to be put upon a particular sentence, than would be required by grammatical rule.

The complainant cannot rely upon the admissions of the answer, and obtain relief upon those admissions, unless he has set them out in his bill.

A complainant in his bill, must put in issue whatever he intends proving, otherwise the evidence will be excluded. The Court of Chancery decrees only *secundum alegata et probata.*

There being no allegation in the bill of part performance, the evidence seeking to establish such part performance, was excluded.

The ground upon which a court of equity decrees the specific performance of a parol agreement, respecting lands, is, that in case of a clear part perform-

ance by one party, it would be a fraud in the other, to refuse to perform the agreement on his part. It would be perverting the statute, from a shield against, into an instrument of fraud.

When acts of part performance are relied upon to take a parol agreement for the sale of lands, (when denied by the owner,) out of the operation of the statute of frauds, full and satisfactory evidence must be offered of the *terms of the agreement*, and of the performance of it, on the part of the complainant.

---

[The object of this bill was to obtain a decree against the defendant, Charlotte C. D. Owings for the specific performance of an alleged contract to sell certain land ; and an injunction against the other defendant, Green, to restrain him from interfering with the complainants in their occupancy and enjoyment thereof.

The bill alleged, that a contract was made between the parties on the 8th of July, 1844, to sell a portion of the land, and, that by a subsequent arrangement, the complainants purchased of the defendant, Owings, through her agent Turnbull, six acres of land, including that which was the subject of the first contract.　The complainants filed with their bill, copies of the letter and deposition of Turnbull, showing the purchase ; and further stated, that the defendant, Green, combining with his co-defendant, Owings, to vex and harrass the complainants, had entered on the land, and erected a fence on part thereof; had been digging and removing ore therefrom; and had hindered the complainants in the performance of their operations.

The bill prayed, that the defendant, Owings, might be decreed to convey the land to the complainants, and, that Green, might be restrained by injunction from putting up fences on the land and digging ore, &c.

The deposition of Turnbull, set out the arrangements made in June, 1845, by him, acting for Miss Owings, with the complainants, to settle the difficulty arising from a misunderstanding of the previous contract ; and stated, that these arrangements with the approbation of Miss Owings, resulted in the second agreement, which was to let the complainants have six acres of land for $2000.

The agreement of the 8th of July, 1844, reserved to Miss

Owings, all the wood on the land, and the reversion of the land with the improvements, after all the ore should be taken out of it.

The answer of Miss Owings, admitted that she signed the agreement of the 8th of July, 1844, but stated, that she was induced so to do by the misrepresentations of Geiger, the complainant's agent, in reference to the land to be conveyed, that she supposed she was selling five acres at $400 per acre, when in fact, the tract contained but two acres ; and, that he also misrepresented to her the determination of Green, regarding a previous contract made by her with him. And she stated, that on detecting the fraud practiced on her, she forbade Geiger to enter on the land, which he did notwithstanding.

She denied, that she had authorized Turnbull to make any contract for her, or that she had ever entertained the intention of entrusting any of her interests to his agency ; and said, that "to protect herself from any such allegation, (as well as denying the same to be true,) she alleges, that there is no writing signed by her to that effect, and she relies upon, and pleads the statute commonly called the statute of frauds."

The Chancellor, in delivering his opinion, after stating the case, said :]

———

The Chancellor :

With regard to the contract of the 8th of July, 1844, as set out in the receipt of that date, I do not deem it necessary to express any opinion, as it is manifest, that that contract, whatever its character may have been—whether obtained by false and fraudulent representations or not—has been merged in the subsequent agreement of July, 1845 ; which subsequent agreement alone, this bill seeks to enforce. And the question, therefore, is, whether the complainants have made out a case which entitles them to the aid of this court in compelling the specific performance, by the defendant Owings, of this latter agreement.

It is urged by the complainants' counsel, that the defendant, Owings, cannot protect herself under the plea of the statute of

31*

frauds, because, in her answer, in which reliance is placed upon the statute, it is levelled, not at the agreement which the bill seeks to enforce, but at the authority of the agent, Turnbull, to make that agreement; and as the cases show that the authority of the agent need not be in writing, the statute has no application to the case.

It is not, however, I think, altogether clear, that in a case like the present, the defendant was bound to insist upon the statute of frauds at all. The answer certainly denies the authority of Turnbull, to make any agreement for the defendant, and, therefore, denies that any agreement binding upon her was made; and under such circumstances, it is by no means certain, that she is not entitled to the benefit of the statute of frauds, without pleading it. In the case of the *Ontario Bank* vs. *Root*, 3 *Paige*, 478, it was decided, that where the complainant sets up an agreement in his bill, which would be invalid by the statute of frauds, unless in writing, and the defendant by his answer denies the agreement, it is not necessary for him to insist upon the statute as a bar, but the complainant at the hearing must establish the agreement by written evidence.

If, however, the defendant in his answer admits the parol agreement, without insisting on the statute, the court will decree a specific performance, upon the ground, that the defendant has thereby renounced the benefit of the statute. *Story's Equity Pl.*, sec. 763; *Blayden* vs. *Bradbear*, 12 *Ves.*, 471; *Cozine* vs. *Graham*, 2 *Paige*, 177; *Jones* vs. *Sluby*, 5 *H. & J.*, 372.

In this case the defendant certainly has not admitted the agreement set up in the bill; and, as that agreement, being by parol, and affecting lands, is invalid by the statute of frauds, it is not so clear, that the defendant may not claim the benefit of the statute at the hearing, even though she has not insisted upon it as a bar.

But I am inclined to think, that the statute is relied upon in the answer in this case.

Perhaps, giving a strictly grammatical construction to that

part of the answer in which the statute is interposed as a defence, it would be more properly applied to the authority of the agent, than to the agreement, which it is said the agent made. But, when it is recollected, that the authority of the agent need not be in writing, and, that a plea of the statute, upon that ground, would be ineffectual, it would seem to be consonant with those principles which regulate pleadings in equity, to put a different interpretation upon the sentence than would be required by grammatical rule. *Birley* vs. *Staley*, 5 *G. & J.*, 432.

This, then, being an agreement clearly within the statute of frauds, it remains to be seen, whether the complainants have succeeded in bringing their case within the exception of the rule, that such agreements cannot be made out by parol proof, by showing a part performance of the contract; for there can be no doubt, that such part performance will take cases out of the operation of the statute. *Moale, et al.* vs. *Buchanan, et al.*, 11 *G. & J.*, 314; *Hall and wife* vs. *Hall et al.*, 1 *Gill*, 383.

It has been insisted by the counsel for the complainants, that though the defendant has denied the agreement set up in the bill, she has admitted an agreement to sell five acres of land to the complainants ; and that, to that extent at least they are entitled to relief. And the case of *Graham et ux.*, *against Yates and others*, is referred to as an authority for the position.

In that case, however, it does not clearly appear, whether the agreement was or was not in writing. The statute of frauds does not, from the report of the case appear to be relied on, and the defendants in their answer express their willingness to convey that part of the property, admitted to have been sold, upon receiving the purchase money and interest.

The case, therefore, is not an authority for the position that the complainants may, as a general rule, rely upon the admissions of the answer, and obtain relief on those admissions, unless they have set them forth in their bill. The contrary doctrine was expressly decided in *Jackson* vs. *Ashton*, 11 *Peters*, *S. C. Reports*, 229, and I have seen no case maintaining a different rule.

It is stated by Mr. Justice Story, in his *Treatise on Equity Pleadings, sec.* 257, "that every fact essential to the plaintiff's title to maintain the bill, and obtain relief, must be stated in the bill, and of course no proof can be generally offered of facts not in the bill; nor can relief be granted for matters not charged, although they may be apparent from other parts of the pleadings and evidence, for the court pronounces its decree, *secundum allegata et probata.*" And in section 28 of the same work, the author says, "it may be proper, however, to remark, that every material fact, to which the plaintiff means to offer evidence, ought to be distinctly stated in the premises, for otherwise, he will not be permitted to offer or require any evidence of such fact."

These principles have been repeatedly sanctioned by the Court of Appeals of this state, and the rule cannot be questioned, that a complainant in his bill, must put in issue whatever he intends proving, otherwise, the evidence will be excluded. The Court of Chancery decrees only *secundum allegata et probata.* *Haywood* vs. *Carroll*, 4 *H. & J.*, 518.

This rule is necessary not only to prevent surprise, but the abrogation of it would enable the complainant to take from his adversary the benefit of his answer, which, if responsive to the averments of the bill, would require a stronger measure of evidence to overcome, than if the fact to be proved was not noticed in the pleadings.

In the treatise, of Mr. Justice Story, already referred to, sec. 264, the rule is pressed still further; it being there said, "that if an admission is made in the answer, it will be of no use to the plaintiff, unless it is put in issue by the bill; and the consequence is, that the plaintiff is frequently obliged to ask leave to amend his bill, although a clear case for relief is apparent upon the face of the pleadings."

In this case, the evidence of all the acts of part performance which are relied upon, to save the alleged agreement from the operation of the statute of frauds, is excepted to by the defendants, "upon the ground, that the bill of the complainants alleges no part performance of said supposed contract or agree-

ment." And it is clear, upon the authorities which have been cited, that if the bill does not contain such allegation, the evidence is inadmissible, and must be excluded.

Upon examining the bill in this case, it will be found to be destitute of any averment of part performance of the agreement, the specific execution of which, it seeks to have enforced. There is no allegation in it, or in either of the exhibits filed with it, of payment of any part of the purchase money, or of the delivery of possession, or of any other act which can by possibility be regarded as a part performance of the contract. The act of part performance, it is to be remembered, "must not be merely introductory, or ancillary to the agreement, but a part execution of the substance of the agreement, and which would not have been done, unless on account of the agreement; an act unequivocally referring to, and resulting from the agreement, and such as the party would suffer an injury from, amounting to fraud by the refusal to execute the agreement." And unless an act, or acts of this kind, are charged in the bill, and proved or admitted, the court will not decree a specific execution of the agreement.

The bill simply alleges, that the complainants purchased of the defendant, Owings, through her agent, Alexander Turnbull, about six acres of ground, including the piece first purchased, and which six acres are described in a plat filed with the bill; but it does not allege, that one dollar of the purchase money was paid to the vendor, or that they, the vendees, were placed in, or took possession of, or made improvements, or expended money on the property, or did, or suffered any act, whatever, which could by any possibility be injurious to them, in case the contract remains unexecuted. The ground upon which the court proceeds, in decreeing the specific performance of a parol agreement in relation to lands, notwithstanding the statute of frauds is, that in the case of a clear part performance of such an agreement by one party, it would be a fraud in the other to refuse to perform the agreement on his part. It would be perverting the statute from a shield against, into an instrument of fraud. *Hamilton* vs. *Jones*, 3 *G. & J.*, 127; *Mary-*

*land Savings Bank* vs. *Schroeder*, 8 *G. & J.*, 93 ; *Moale* vs. *Buchanan*, 11 *G. & J.*, 314.

Without meaning to express any opinion upon the character and weight of the evidence of the acts of part performance, relied upon by the plaintiffs, to take this case out of the operation of the statute of frauds ; assuming, that they had by the frame of their bill, entitled themselves to introduce such evidence, I am clearly of opinion, that the evidence is inadmissible, as not being within any issue presented by the bill ; or indeed by the pleadings on either side. No act of part performance has been alleged, and none can be proved, and, therefore, it follows that the complainants cannot have the relief they seek by their bill.

The agreement also, in this case, might perhaps be regarded as deficient, in that decree of certainty and precision which would be required to enable the court to decree its specific execution.

When acts of part performance are relied upon to take a parol agreement for the sale of lands, when denied by the answer, out of the operation of the statute of frauds, full and satisfactory evidence must be offered of the *terms of the agreement*, and of the performance of it, on the part of the complainant. *Hall* vs. *Hall*, 1 *Gill*, 383.

A court of equity will not defeat the salutary intent of the statute of frauds, and it will not enforce a parol contract for conveyance of land, even where the possession thereof, has been delivered, where it does not clearly appear what the contract was. *Wingate* vs. *Dail*, 2 *Harr. & Johns.*, 76.

In this case we have seen, that by the contract of July, 1844, the *fee* in the land therein described, was not to be conveyed to the complainants. On the contrary, the agreement in terms provides, that when the ore should be taken out of the land, the land itself was to revert to the vendor, Miss Owings.

In the subsequent parol agreement of 1845, and which was for the purchase of six acres, the two acres comprehended in the first purchase were embraced ; and it may not, perhaps, be regarded as a very violent presumption, to suppose that the

contract in relation to the six acres, was similar in its terms to the contract in relation to the two acres. That is, that when the iron ore should be removed from the land, the land itself should revert to the vendor. And, indeed, when it is manifest from the whole case, that the land was only desirable to the plaintiffs on account of the ore it contained, it is not at all improbable, that such was the agreement of the parties. But, at all events, it is very certain, that the terms of the agreement which this bill seeks to have enforced, do not appear; and, as we have seen, the law is settled by the highest authority in this state, that there must not only be evidence offered fully and satisfactorily demonstrating *the terms of the agreement*; but, that those terms, so far as they are incumbent on the plaintiff, must be performed on his part before he can have a decree, compelling performance on the other side.

The plaintiffs, by their pleadings, have not put themselves in a condition to offer this proof; and, therefore, if they have offered any such point, which I do not mean to decide, they cannot have the benefit of it.

Entertaining these views, I am of opinion, that the bill must be dismissed, but without prejudice, and shall pass a decree accordingly. And, under the circumstances of the case, costs will not be decreed.

[An appeal was taken from this decree, but it has not yet been decided.]