NICHOLAS POPPLEIN and ELIZABETH H. COLLINS and RICHARD BERNARD, Adm'rs c. t. a. of JOHN ESCHBACH *vs.* DANIEL J. FOLEY, Trustee. NICHOLAS POPPLEIN and ELIZABETH H. COLLINS and RICHARD BERNARD, Adm'rs c. t. a. of JOHN ESCHBACH *vs.* MARCELLA MACTAVISH, Trustee.

*Specific performance of Contract—Mistake—Parol Evidence— Reformation of Contract—Agreement for Lease, containing no statement of the Length of the term.*

If a contract respecting real property be in writing, and is certain, fair in all its parts, for an adequate consideration, and capable of being performed, it is as much a matter of course for a Court of equity to decree specific performance of it, as it is for a Court of law to give damages for a breach of it.

A mistake in a written contract may be proved by parol, and the contract rectified, and specifically executed as reformed.

A written contract for a lease, which was intended to be for the term of ninety-nine years, renewable forever, contained no statement of the term for which the lease was to be made. A bill was filed by the lessors for a reformation and specific performance of the contract, and alleging that the length of the term of the demise agreed upon, had been omitted from the written contract by mistake or oversight. HELD:

That the mistake having been established by the parol proof in the case, the complainants were entitled to have the contract reformed by the insertion of the words, "for the term of ninety-nine years, renewable forever," or words of like import; and when so reformed, to have the agreement specifically executed.

APPEALS from the Circuit Court of Baltimore City.

The cases are stated in the opinion of the Court. ·

The causes were argued before ALVEY, C. J., STONE, MILLER, IRVING, and BRYAN, J.

*Richard Bernard,* and *Francis P. Stevens,* for the appellants.

*S. T. Wallis, Jr.,* and *S. T. Wallis,* for the appellees.

MILLER, J., delivered the opinion of the Court.

The records in these cases show that Popplein and Eschbach entered into two written contracts, dated 10th of March, 1876, by which they agreed to lease two adjoining vacant lots of ground fronting on Eutaw Place, in the City of Baltimore, one from Marcella Mactavish, trustee of C. C. Mactavish, and the other from Daniel J. Foley, trustee of Emily Mactavish. The two agreements are in precisely the same terms, and but one of them need be stated. It is as follows:

Popplein, *et al. vs.* Foley.    Same *vs.* Mactavish.

"BALTIMORE, March 10, 1876.

"We hereby agree to lease of Daniel J. Foley, trustee of Emily Mactavish, deceased, a lot of ground fronting seventy-six feet eight inches on the northeast side of Eutaw Place, by a depth of one hundred and thirty feet more or less to Jordan alley, said lot being situate between McMechen and Mosher streets, and we agree therefor to pay the annual rent of twelve dollars per front foot for said lot, payable half-yearly, and to be computed from the 1st day of June, 1876. We to have the privilege of redeeming said rent at any time within the period of four years from that date, June 1st, 1876, at six per cent. upon giving the said trustee sixty days' notice of such intention to buy out, in writing. Taxes to be adjusted to 10th of March, 1876.

"NICH'S POPPLEIN,
"JOHN ESCHBACH.

"Witness:—*Frank H. Yearley.*

"I approve of the above lease.

"*D. J. Foley,* Trustee."

On the 10th of July, 1880, two bills were filed for specific execution of these agreements, one by Mrs. Mactavish and the other by Foley, each containing substantially the same averments. They charge that in March, 1876, the defendants, Popplein and Eschbach, applied to Mr. Yearley, a real estate broker, and the agent of the complainants, to lease the lots in question for ninety-nine years renewable forever; that after the terms had been agreed upon they requested Yearley to prepare agreements for such leases, and he accordingly prepared these contracts, which they signed, and which were intended by and between them as agreements for leases for ninety-nine years renewable forever, and none other. The bills then set out delivery of possession and various acts of part performance, continuing for several years, and explain

384          MARYLAND REPORTS.

Popplein, *et al. vs.* Foley.   Same *vs.* Mactavish.

how the immediate execution of the leases was postponed at the instance and for the accommodation of the defendants. They then charge that since the year 1878 the defendants, though frequently requested, have persistently refused to accept or join in the execution of such leases, and have finally assumed the position that under these agreements they bound themselves to become tenants from year to year only. This construction of the contracts the complainants repudiate, and aver that the same are operative and valid, and, in accordance with the usage in the City of Baltimore in such cases, are necessarily to be construed as agreements to lease for ninety-nine years renewable forever, although the length of the terms is not specifically set forth. They further charge that while they are advised and insist that these contracts are operative as agreements for such leases, notwithstanding the mistake and oversight by which the length of the term was omitted to be set forth in words, they nevertheless insist, and will claim, that this omission was altogether an oversight and mistake such as Courts of equity will relieve against, and that they are entitled to have the same reformed by the insertion and designation of the term of ninety-nine years renewable forever, as the term of the demises agreed upon. They then pray that these contracts may be specifically enforced as agreements for such leases to the same effect as if so written in words, and that they may be reformed so as to read as if they had been so written, should the Court deem such reformation needful to the relief of the complainants, and for general relief.

The defendants in their answers admit the execution, but insist that by the true construction of these agreements, they only rented the property from year to year. They deny that when they signed them they were intended as contracts for leases for ninety-nine years renewable forever, or that possession was delivered to, or was ac-

cepted by them as tenants for such terms. They also deny that the other acts of part performance alleged in the bills have reference to the contracts as construed by the complainants, or that the draughtsman made any mistake which a Court of equity can correct or reform. They further deny that any usage can be injected and incorporated with these agreements so as to fix the term for the leases, and again insist they can only be construed as creating tenancies from year to year.

After general replication to these answers the testimony of a number of witnesses on the part of the complainants was taken, but no testimony was offered by the defendants. The cases were heard together and the Circuit Court passed a decree enforcing the contract in each case as an agreement for a lease for ninety-nine years renewable forever, and from these decrees the present appeals have been taken by the defendants.

While specific execution is a matter not of absolute right in the party but of sound discretion in the Court, yet if a contract respecting real property is in writing, and is certain, fair in all its parts, for an adequate consideration, and capable of being performed, it is as much a matter of course for a Court of equity to decree specific performance of it, as it is for a Court of law to give damages for a breach of it. *Smoot, et al. vs. Rea & Andrews,* 19 *Md.,* 398. The only difficulty in these cases is that in the agreements the length of the term for which the leases were to be made is not distinctly expressed in words. Were it not for the decision of our predecessors in *Myers vs. Forbes,* 24 *Md.,* 598, we should be strongly inclined to hold that the Court would be justified in construing them as providing for and contemplating nothing more nor less than leases for ninety-nine years renewable forever. The subjects of the contracts are vacant lots, and these are located in a city where this peculiar form of lease is not only in constant and daily use, but has been

from its foundation the well-known, familiar, favorite and prevailing system of real estate tenure. Language which provides for the *leasing* of such property, and paying therefor an annual rent of twelve dollars *"per front foot,"* payable half-yearly from a specified date, with the privilege to the lessees *"of redeeming said rents"* within a certain number of years *"at six per cent.,"* becomes intelligible only when referred to such leases. Granting the lessee the privilege of *redeeming* the rent *at six per cent.* has no significance whatever in leases from year to year, and such a provision is never incorporated in contracts intended to create that description of tenancy. But it is a common provision in these peculiar leases, and every one familiar with the subject knows that it secures to the lessee the right to redeem the perpetual ground rent, or, in other words, to buy out the reversion and secure the fee, by paying such principal sum the interest upon which at six per cent. will equal the annual rent stipulated for in the lease. The construction insisted upon by the appellees is, therefore, the one which the subject and the surroundings, as well as the peculiar provisions of these contracts would seem to require us to adopt; but in *Myers vs. Forbes,* where a similar agreement was under consideration, the Court held that the term or duration of the lease was an essential part of it, and in the absence of an express stipulation in that respect specific performance of the contract could not be decreed.

But there is at least one important distinction between that case and the present. In that bill there was no allegation that the omission was a mistake, nor was it asked that the contract in that respect be reformed and then specifically executed. If therefore the cases before us admit of granting relief on this ground, there is nothing in the decision in *Myers vs. Forbes* to prevent its being done, for it is well settled law in this State, as well as the established doctrine in this country, that it is competent

for a complainant in a bill for specific performance to allege and prove by parol a mistake in a written contract, have it rectified, and specifically executed as reformed. *Moale, et al. vs. Buchanan, et al.,* 11 *G. & J.,* 314; 1 *Story's Eq.,* sec. 161 and *note; Waterman on Specific Performance,* sec. 379. In our judgment the proof is sufficient to make out the mistake. It is shown by the testimony of Yearley and the other witnesses *that* when Popplein and Eschbach negotiated with Yearley, the agent of the complainants, they made application to lease the lots for ninety-nine years, and after the prices, terms, and adjustment of taxes were agreed upon, the written contracts were prepared by Yearley's son, and were then signed by the parties; *that* there was nothing said before or at the time of making these agreements about its being a renting from year to year, but on the contrary, as Yearley testifies, it was to be a lease for ninety-nine years renewable forever, with all the usual covenants in such instruments, with a special covenant additional giving them the right to buy out the rents at the time specified in the agreements; *that* when Yearley spoke to them about preparing the leases they said there was no need of hurry about it, as they had bought the property expecting to sell it again at an advance, and it would be better and less expensive to them to have the leases made directly to their vendees; *that* Yearley thereupon delayed calling on Foley for his lease, but as Mrs. Mactavish was in Europe it was thought advisable that her lease should be prepared and executed by her, which was accordingly done, and the lease thus executed in the usual form of leases for ninety-nine years renewable forever, and also embodying the privilege of redeeming as specified in the contracts, was *shown and submitted to* these defendants and they *approved it saying it was all satisfactory,* but again said there was no hurry about these papers, as they had not yet disposed of the property; *that* after the contracts were executed they

388          MARYLAND REPORTS.

Popplein, *et al. vs.* Foley.    Same *vs.* Mactavish.

assumed ownership of the property, possession of which was delivered to them, and after the taxes had been adjusted up to the 10th of March, 1876, *they paid the residue of the taxes for that year*, and also paid the *rents* up to and including the year 1878, all the bills for which were made out for "*ground-rent*" due by them; *that* during this period they made efforts to sell the property to several parties, and at one time said they had sold it, and that each had realized between $2000 and $3000; *that* in February, 1877, they appealed to the Board of Control and Review from the valuation placed upon the property by the assessors, claiming an abatement of $5 per front foot, and told counsel whom they employed to prosecute the appeal *that it was their property; that* afterwards in 1879, when the property was assessed for the improvement of Eutaw Place, they applied to Yearley for an abatement of the rent, or payment by him of this assessment, and when this was refused, they then for the *first time,* and after consulting counsel, took the position that the agreements were not so written as to cover leases for ninety-nine years, and that they were only tenants from year to year.

The mere statement of these facts, as thus proved, makes it abundantly clear that it was the intention of both parties to stipulate for leases for ninety-nine years with covenants for perpetual renewal, and that the failure so to write it in the contracts in express words, was the result of oversight or mistake on the part of the scrivener. We have no hesitation, upon this proof, in deciding that the mistake is established, and that the complainants are entitled to have the contracts reformed by the insertion of the words "for the term of ninety-nine years renewable forever," or words of like import, after the word "lease" in each of them, and when so reformed to have the agreements specifically executed. The only error in the decrees appealed from is that they do not provide for such

reformation of the contracts, and we shall, therefore, without affirming or reversing, remand the causes in order that the decrees may be corrected in this respect, and then proceeded with according to the usual practice of the Court.

> *Causes remanded, without affirming or*
> *reversing the decrees appealed from.*

(Decided 21st February, 1884.)