## EDWARD V. O'KEEFE *vs.* THE IRVINGTON REAL ESTATE COMPANY.

*Decree Dismissing Bill Without Prejudice—Res Adjudicata—Reformation and Specific Performance of Contract for the Sale of Land—Mistake—Election Between Remedies—Bill for Specific Performance and Action for Damages.*

When a decree dismisses a bill in equity "without prejudice to the complainant," such decree is not a bar to a subsequent suit between the same parties relating to the same subject-matter.

When a written contract for the sale of land is proved to contain a stipulation inserted by mistake instead of the real agreement of the parties, a Court of Equity will in the same proceeding reform the agreement and decree specific performance thereof.

In this case the contract for the sale of unimproved land in a suburb provided that it was subject to the opening of streets, &c., as contemplated by the vendor "and as to *grades established* by M." *Held*, that the agreement of the parties was that the sale should be subject to grades *to be established*, and that the contract should be reformed to that intent and a decree for specific performance made.

Upon breach by defendant of his contract to buy land, the vendor may sue either for specific performance or for damages, but he cannot sue in one Court for specific performance and in another for damages for entire non-performance.   The two proceedings are inconsistent with one another, and the vendor will be compelled to elect between his remedies.

But the fact that the vendor brought an action at law to recover a small part of the purchase money does not preclude him from afterwards suing for specific performance.   The decree in the equity case, however, for the entire price, will be a bar to the further prosecution of the action.

·Appeal from a decree of. Circuit Court No. 2, of Baltimore City (STOCKBRIDGE, J.)   The contract sued on was for the sale of certain unimproved land lying at Irvington, a suburb of the city of Baltimore.   It was understood that this property was to be developed by the plaintiff by opening streets, alleys, etc., some of which would bind upon the defendant's lot, and when the draughtsman of the contract came to specify the grades of these proposed thoroughfares, it is alleged that by inadvertence he wrote " subject to the opening of streets and alleys as contemplated by company, and as to grades established by Mr. Mavin, surveyor," whereas both parties clearly intended that the purchase was subject to " grades *to be* established by Mr. Mavin, surveyor."   The change which the Court was asked to make and did make consisted merely in the insertion of the two words "*to be*" before the word " established."   The grades subsequently established were somewhat lower than those which the appellant claims had previously been established, and it is for this reason that the appellant refused to pay for the property.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and PEARCE, JJ. (Jan. 20, 1898).

*Richard Bernard* and *Alfred D. Bernard*, for the appellant.

*Edgar H. Gans* (with whom were *Benzinger & Caldwell* and *B. H. Haman* on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

The bill in this case was filed by the appellee for the purpose of having a contract for the sale of land reformed, and when so reformed, of having it specifically enforced, which was accordingly decreed. In addition to a mass of testimony taken after answer filed, there is incorporated in this record the entire proceedings in a previous case between these same parties, covering 58 pages, in which specific performance of the same contract—without asking reformation thereof—was sought, and in which the bill was dismissed without prejudice.

The substantial question presented in this case is one of fact to be determined by the testimony, but the 5th paragraph of appellant's answer sets up the former decree, under the plea of *res adjudicata*, and this defence must be considered at the outset. If the decree in the former case had not contained the qualifying words "*without prejudice*" the question presented would have been whether an absolute decree dismissing a bill for specific performance only, as the contract then appeared on its face, would be a bar to the present bill, asking that the contract be reformed, and when so reformed, be specifically enforced, but upon that question, which is not presented here, we intimate no opinion. We think, however, it is clear that not only the effect, but the purpose of the words, "without prejudice," in a decree, is to prevent defendants from availing themselves of the defence of *res adjudicata* in any subsequent proceeding by the same plaintiffs on the same subject-matter. This is the doctrine of *Story Eq. Plead.* sec. 793 ; of *Daniel. Ch. Prac.* vol. I, p. 659, and of *Beach Eq. Prac.* sec. 643–4. In *Stewart* v. *Stone*, 3 G. & J. 511, the Court said "The complainant ought not to be precluded if he has equity from again presenting himself before the Court ; *and to afford him that opportunity* we think it necessary to reverse the decree,

which should have been without prejudice." And in *Mc-Dowell* v. *Goldsmith*, 24 Md. 229, in treating of a former decree, it was said : " If the Chancellor intended to leave the complainants' rights and claims unaffected by the decree, he should have dismissed the bill without prejudice." This is the law laid down in decisions from other States and tribunals. *Lang* v. *Waring*, 25 Ala. 625 ; *Fish* v. *Parker*, 14 La. An. 491; *Thurston* v. *Thurston*, 99 Mass. 39 ; *English* v. *English*, 12 C. E. Green, 579 ; *Wanzer* v. *Self*, 30 Ohio St. 378 ; *Magill* v. *Merc. Trust Co.*, 81 Ky. 130 ; *Gunn* v. *Peakes*, 30 N. W. Rep. 466 ; *N. P. R. R.* v. *St. Paul R. R.*, 47 Fed. Rep. 536 ; *Durant* v. *Essex Co.*, 7 Wall. 107 ; *Lyon* v. *Perrin Mfg. Co.*, 125 U. S. 698.

In some of the cases cited above, the reasons for so holding are stated with much force and clearness. In *Wanzer* v. *Self, supra*, it was said : " To give it the effect of a judgment on the merits, would not only create that which does not exist, but might work a great wrong to the plaintiff, by finally determining a just cause of action, which the Court did not adjudge against him, and by misleading him to acquiesce in a judgment from which he would have appealed had it been regarded as conclusive." In *North Pac. R. R.* v. *St. Paul R. R., supra*, it was held that " a decree without prejudice is like a non-suit in a common law action, and that when the qualifying words *without prejudice* are used, although the *relief sought* in a new bill and the matter therein is precisely the same as in the original bill, the parties will be permitted to litigate their claims as if no previous suit had been instituted."

The latest Maryland case upon this question is that of *Martin* v. *Evans*, 85 Md. 8, where the decree dismissing a former bill was absolute, and where counsel sought to seize upon certain expressions in the opinion of the Court in the former case to show that the decree was based upon want of jurisdiction, and was therefore no bar to a subsequent suit, but the Court held that the decree, and not the opinion, was the instrument through which the Court acts, and

must be taken, as expressed in *Gunn* v. *Peakes, supra,* "for what it is, and not for what it ought to have been." The question in *Martin* v. *Evans,* was in fact the converse of the case before us, but the principle is the same, and the Court cited with approval several of the cases cited above. Both upon reason and authority we think it is clear the former decree cannot be effectively pleaded in this case.

This contention being determined, we come to the main question in this case.

Where a contract respecting real estate is in writing, and is in its nature and circumstances unobjectionable, it is as much a matter of course for a Court of Equity to decree a specific performance of it, as it is for a Court of Law to give damages for a breach of it. *Brewer* v. *Herbert,* 30 Md. 302; *Popplein* v. *Foley,* 61 Md. 381. And it is well settled that equity will in the same proceeding reform and specifically enforce a contract. *Moale* v. *Buchanan,* 11 G. & J. 314; *Popplein* v. *Foley, supra.* It only remains, therefore, for us to determine whether mutual mistake has intervened as alleged—and if so, whether the contract when reformed is such as equity will enforce.

While the governing rule is one of great strictness and is never applied except where the case is made out to the entire satisfaction of the Court, yet where the proof meets this requirement fully, the power invoked is one of the most salutary exercised by a Court of Equity. *Stiles* v. *Willis,* 66 Md. 557.

We agree with the Court below in the opinion expressed by it, that "the weight of evidence is overwhelming that no grade whatever had been established at the time of the signing of the contract on the 16th of October," and if this be true, the language of the contract "and as to grades established by Mr. Mavin, surveyor," read in the light of surrounding circumstances, and of the condition of the property which was the subject of the contract at that date, would be intelligible only by assuming that the words "to be," or the word "hereafter" were inadvertently omitted

before the word " established." That this must, under all the proof in the case, have been the true understanding of both parties would seem to be conclusive when it is remembered that the same clause of the contract shows that the sale was made " subject to the opening of streets and alleys *as contemplated* by the company," not as *determined* or *established*, but as *contemplated*, that is as *hereafter* to be determined or established. The testimony shows that at the date of the contract only Augusta and Euclid avenues were located, on which the lot in question abutted, and as to streets and alleys not then located, the grade must necessarily depend upon the character of the ground where the location was made.

The meaning of the phrase " to establish," in this connection, is not obscure or uncertain. Bouvier defines it " to settle firmly." In *Smith* v. *Forrest*, 49 N. H. 237, where the question was as to the establishment of a corner boundary, the Court said it meant " to settle certainly and fix permanently." In *Succession of Jacob Weigel*, 18 La. An. 49, the word " established," as used in the Civil Code, was defined as " permanently settled and confirmed." In regard to the mutual understanding of the parties as to whether any grade was established at the date of the contract, there are but two witnesses, John F. Williams, then president of the appellee, and the appellant, Edward V. O'Keefe. Williams testifies that Augusta avenue had been located and opened by a former owner, Mr. Ditty, and that Euclid avenue, or Avenue A, and an avenue north of that were determined on, but that beyond this nothing was determined as to the development of the property ; that he and O'Keefe discussed the matter ; that he told O'Keefe *the grades were not established ;* that the surveyor, Mr. Mavin, was then engaged in the work, and that in making the contract of sale the company was to be left in control, with power to open streets and establish grades as it saw fit, consistent with the general scope of the ground ; that O'Keefe clearly understood and agreed to this, and that as to all these facts the

recollection of the witness was clear and distinct, and that if the contract did not express this agreement, it was the fault of witness in its preparation.    This testimony was not shaken upon cross-examination.    O'Keefe upon his examination in chief said it was not stated or agreed in his conversation with Williams that no grades were established; that he was referred, as to grades, to Mr. Mavin, by Mr. Cone, the general manager; that he understood from Mr. Mavin that the deepest cut would be 6 or 7 feet in front of his house, and that he would not have bought the property if he had known what the grade would be.    Upon cross-examination, however, it was plain that the plat shown him by Mr. Mavin was an experimental plat only, not establishing any grade.    O'Keefe says if there was conversation between Williams and himself as to the company being left in control of the grades, that he did not hear it; that " he paid no attention to that."    He admits that Mr. Mavin never told him he had established a grade, and that he would have signed any contract they might have drawn.    Both Mr. Cone and Mr. Mavin flatly contradict Mr. O'Keefe. Mr. Cone testifies emphatically no grade had been established on Oct. 16th; that Mr. Mavin had made an experimental plat showing a grade of about 7 or 8 feet which he, Cone, hoped would answer, but which Mr. Mavin from the beginning contended would not do, and which was never established.    Mr. Mavin testifies that but one grade was ever established on Euclid avenue, and that not until sometime in November, and all the testimony tends to substantiate this fact.    We think the proof of mutual mistake as alleged in the bill is clear and conclusive, and that the duty to reform the contract is equally clear.    When so reformed the contract lacks none of the elements of certainty, reasonableness and mutuality.    The appellee has done all that devolves upon it thereunder, but the appellant has not complied with its terms, and its enforcement against him must follow as a matter of course.

But the appellant suggests that as there was a pending

suit to recover a portion of the interest embraced in the decree in this cause, the bill cannot be maintained, on the ground that the appellee cannot prosecute its claim in two Courts at the same time, and for this position he relies upon *Clagett* v. *Hall*, 2 Md. Ch. 156. In that case the bill was filed to reform and correct a settlement closed by a note upon which suit had been brought at law, judgment rendered and *fieri facias* was outstanding. The Chancellor in the course of his opinion said, " I hardly think he can be allowed to prosecute the claim in two Courts at the same time, recovering one portion thereof at law and one in equity, but my opinion against the relief sought rests upon the ground that the mistake is neither admitted nor proved." The bill in the present case was filed May 27th, 1897, and the pending suit at law, which was for $204 only and which is alleged, but not shown to be for interest, was commenced Oct. 28th, 1895. It may well be conceded that upon breach of a contract to convey land, the person injured may sue either for specific performance or damages, and that if he proceed for both on the whole case the Court will, on application, compel him to elect. But one may nevertheless be entitled to damages for violation of the contract up to the time of bringing the suit, with specific performance for the future. *Waterman on Specific Performance*, sec. 5. And interest is given by way of damages. In *Fennings* v. *Humphery*, 4 Beavan, 1, defendant agreed to grant a lease of a vault to plaintiff and also to erect a crane, &c., within a given time, and defendant having made default, plaintiff sued for specific performance, and pending that suit, also commenced an action at law for damages for non-performance of the agreement. Defendant obtained an order requiring plaintiff to elect in which Court he would proceed, and the case was heard on motion to discharge this order. The Master of the Rolls said, "as by the bill she asks for a specific performance of the agreement, if in the action at law she sought compensation for its entire non-performance, the two proceedings would be inconsistent with each other. The plain-

tiff would in one Court be suing for the thing itself and in the other for compensation in lieu of the thing itself. But the action is brought only for such damages as were sustained up to the time when the action was brought. Under these circumstances I think the action and the suit are not prosecuted for one and the same thing, and I am therefore of opinion that the order requiring election should not have been made." But in this case the appellant has not asked that the appellee be put to its election, and not having done so the question is not before the Court. Should any effort be made to further prosecute the suit at law, the decree in this case when affirmed can be pleaded in bar.

We can see no ground upon which the relief granted the appellee below can be denied, and we shall therefore affirm the decree.

*Decree affirmed.*

(Decided February 10th, 1898).