MICHIGAN RAILROAD COMMISSION *v.* DETROIT & MACKINAC RAILWAY CO.[1]

1. MANDAMUS—IRRELEVANT MATTER IN ANSWER OR RETURN—MOTIONS—PRACTICE—PLEADING.

Allegations of irrelevant matter, included in an answer in mandamus proceedings, will not be struck out on motion, but the proper practice is to bring the objectionable allegations to the attention of the court at the hearing or in the briefs of counsel.

2. SAME—FRAMING ISSUES—ANSWER OF RESPONDENT.

On mandamus proceedings by the Michigan railroad commission against a railway corporation, which declined to obey the order of such commission requiring the company to continue to carry products of a corporation engaged in lumbering over a spur track which the railway company had commenced to tear up, it was not necessary to frame issues as to pleadings and evidence involved or included in a chancery cause that respondent had instituted to test the correctness of the order made upon pleadings and proofs by relator; and the merits of the controversy pending before the court of equity were not in issue, but merely the question whether such order should remain in force until the determination of the equity proceedings.

3. RAILROADS — MICHIGAN RAILROAD COMMISSION — CARRIERS — FREIGHT—LOGS AND LOGGING—DISCRIMINATORY ACTS.

Findings of the Michigan railroad commission as to rates or acts of a carrier railroad which are charged to amount to discrimination, *prima facie* are correct and stand until modified or set aside by the courts; if attacked, the complaining party has the burden of showing by clear and satisfactory evidence that the order is unlawful or unreasonable..

4. SAME—REGULATION.

In equity proceedings to test the validity of an order of the Michigan railroad commission whereby the complain-

[1] Removed to the United States Supreme Court by writ of error January 3, 1914.

ant was required to continue freight service over a spur track that it was purposed to tear up, where defendant had offered before the commission and later offered in mandamus before this court to furnish a bond indemnifying the railroad company for all cost and expenses that it might incur in relaying track already removed, the bond also securing the company for interest thereon and payment of all rates that might be fixed by the railroad company and approved by such commission, a writ of mandamus is allowed to enforce the order of the railroad commission pending a final adjudication as to the legality of its findings and judgment.

OSTRANDER and STONE, JJ., dissenting as to tne extent of relief to be granted.

Mandamus by the Michigan railroad commission against the Detroit & Mackinac Railway Company to require respondent to obey an order of the relator. Submitted January 14, 1913.   (Calendar No. 25,373.) Writ granted December 20, 1913.

*Gillett & Clark,* for relator.

*James McNamara* and *Fred A. Baker,* for respondent.

MCALVAY, J.   This is an application by the Michigan railroad commission for a writ of mandamus to enforce an order made by it in the matter of the *Fletcher Paper Company* v. *Detroit & Mackinac R. Co.* to remain in force until the hearing and final determination of a cause now pending in the circuit court for Wayne county in chancery.

The order was granted on the petition of the Fletcher Paper Company of Alpena, the owner of logs and timber located along the line of what is known as the "Tubbs Branch" or "Martindale Spur," and also the owner of the right of way, roadbed, and ties of this spur, upon which the rails of the company are laid, which is a logging branch of the respondent railroad company, and which leaves the main line of

road at a station called Case, and extends about five miles in a southerly direction from that point.

The Fletcher Paper Company was engaged in delivering its logs along this branch road and shipping them to Alpena or other points on the railroad company's main line, and had a large amount of logs on the skidways along the track about one mile south from the main line ready for shipment, when the railroad company, without notice, took up about half a mile of its rails between the point where these logs were placed for loading and the main line, making it impossible to make any further shipment. The railroad company had operated its cars over this branch road for several years, transporting forest products of those having such along the branch for shipment, and had established schedules of rates for the same, which were duly filed with the Michigan railroad commission and published, and it operated this branch in the same manner as it operated many other branches of like character in that territory. It had notice of the Fletcher Paper Company's purchase of the right of way, roadbed, and ties of this branch from the Churchill Lumber Company, and afterward for some time accepted and transported its logs from this branch according to schedule rates without question. The Fletcher Paper Company, as soon as these rails were removed, filed its bill of complaint in the circuit court for the county of Alpena in chancery, for the purpose of restraining the railroad company from taking up its rails on this branch, and enjoining it to continue to operate this spur and haul out the Fletcher Paper Company's logs to and on its main line and deliver them at its mills in Alpena county. The hearing of the issue joined in that case resulted in a decree dismissing the bill of complaint, but without prejudice to complainant to file its petition for relief with the Michigan railroad commission. Thereupon the Fletcher Paper Company filed such a petition with

the commission, which proceedings resulted in the granting of the order the enforcement of which is sought in these mandamus proceedings.

For the purpose of a clear understanding of the facts in this case, as found by the Michigan railroad commission, from the evidence before it, in making the order in question granting the relief asked for by the Fletcher Paper Company, we embody herein the opinion and order of the railroad commission:

"OPINION.

"By Commissioner Hemans:

"The facts disclosed by the complaint, answer, and proofs in the above-entitled matter are as follows:

"In the year 1905 the Churchill Lumber Company, of Alpena, was the owner of a tract of timber lands, located in Presque Isle county, extending some five miles south of Case, a station on the main line of the Detroit & Mackinac Railway, the defendant herein. The owner, desiring to cut the timber, effected an arrangement with the defendant for railroad facilities, whereby the logs could be transported to Alpena. The contract which the parties made was a verbal one, providing in substance that the Churchill Lumber Company was to procure a right of way from the main line of defendant company to and through the timber lands. It was to grade the right of way, and place the ties, and the defendant railway was to place its rails thereon, and haul the forest products to the lumber company's place of manufacture. The agreement was fully consummated, and the road placed in operation during the year 1905. It has since been known as the 'Tubbs Branch' or 'Martindale Spur.'

"It is important to note that the contract, or agreement, by which this particular branch road was constructed was not exceptional in character; but that both as to its form and provisions it was in keeping with the custom that was then and is still followed by the defendant and by such other roads as engage in the transportation of forest products from the places of their severance to the places of manufacture. The magnitude of the lumbering operations, the great ex-

tent of timber tracts required to keep mills running, and economic operation have necessitated the construction of branches and spurs from the main line of such roads which traverse the timber sections into the adjacent forests. In many instances such roads have been constructed by the lumber companies, are private in character, and are, by the statutes creating this commission, excepted from its supervision or control. In other instances, as in this case, the branches have been both constructed and operated as appendages to main line. In such cases, as the evidence discloses, it is the custom of both the defendant and other railroads, in the sections, to construct such spurs and branches into the timber tracts; the roads requiring the lumbermen to procure the right of way, to make the grade, and place the ties, while it places the rails, and transports the woodmen's harvest. These agreements between carrier and lumbermen have been quite generally left in parol; but the evidence offered by the defendant suggests nothing in modification of the claimed terms of such construction, except that it was the custom of the defendant before entering into such agreements to ascertain that the shipper had timber contiguous to a proposed branch equal to at least 2,000,000 feet per mile of road to be constructed.

"The construction of the 'Tubbs Branch,' so far as the defendant participated in it, and its subsequent operation by it, was therefore not an isolated case, but one of many of like character. The branch was ultimately constructed at a total length of something more than five miles. There were several proprietors owning timber contiguous to the branch. The Churchill Lumber Company, at whose instance the branch was constructed, owned from 12,000,000 to 14,000,000 feet. There were other extensive holdings by the Lobdell & Churchill Company, of Onaway, Embury-Martin, of Cheboygan, while the complainant was the owner of more than 21,000,000 feet, the transportation of which was to be facilitated by the branch in question.

"Between the establishment of the branch and the 8th of June, 1910, the Churchill Lumber Company cut and shipped out all of its timber contiguous to the Tubbs Branch, and on the date last mentioned

apprised the defendant railway company of this fact, and requested the removal of the rails from the right of way. At this time the complainant and the Lobdell & Churchill Company had camps actively engaged in lumbering operations on their respective properties, and were shipping considerable quantities of logs over the branch on the published tariffs of the defendant company.

"The records of this department disclose that from the creation of the department the defendant, through its public tariff files, has recognized this branch as a part of its general transportation system. (See M. R. C. No. 76; M. R. C. No. 250; M. R. C. No. 265; M. R. C. No. 274; M. R. C. No. 277; M. R. C. No. 279; M. R. C. No. 303.) The proofs disclose that under such tariffs, during a period of three years previous to the arising of the difficulty in question, the complainant offered and had transported over the Tubbs Branch to Alpena logs to the extent of 1,300,000 feet, while other extensive shipments were likewise made by the Lobdell & Churchill Company and the Embury-Martin Company.

"During the year 1908 forest fires killed between 5,000,000 and 6,000,000 feet of timber belonging to complainant adjacent to the branch in question, and in the winter of 1909 and 1910 complainant began preparation for the cutting of this and other portions of the tract. Notwithstanding the notice of the Churchill Lumber Company of June 8th, above referred to, the defendant continued to transport the logs of complainant, and on August 3, 1910, the complainant acquired from the Churchill Lumber Company, for a consideration of $4,000, all the right of the latter concern to the right of way and ties of the Tubbs Branch, so that, so far as the physical property of the road was concerned, the complainant thereafter stood in the same relation to it that the Churchill Lumber Company had occupied, and in the same relation that all other companies stand to railroad branches for which they have furnished the right of way and ties, and the railroad companies have furnished rails. The Churchill Lumber Company at once, upon effecting the sale to complainant, by letter apprised defendant of the fact of such sale, and requested that the rails be not removed. The de-

fendant company thereafter continued to accept shipments from complainant over the branch until the 9th day of September following; between August 3d and September 9th more than 100,000 feet of logs being transported. On the latter date the defendant, without notice to complainant, took up about one-half mile of rail from the branch, beginning about one-half mile from the main line, and extending nearly to the skidway upon which the complainant had at the time approximately 145,000 feet of logs, skidded and ready for shipment, while 375,000 feet more were upon the rollways in the adjacent forest. On the very forenoon of the day the rails were torn up shipments were made for complainant under tariffs that were then and that continued thereafter in force. The complainant thereafter made a formal request that cars be placed and his shipments accepted. With this request the defendant refused to comply, leaving the rails piled by the right of way, and insisting that the tariff applicable to the branch had been canceled by eliminating the same from the station list. As under the law tariffs cannot be canceled except upon notice to this commission, there is no force to this contention.

"Upon being apprised of the action of the defendant in removing the section of rail from the branch, the complainant filed a bill of complaint against defendant in the circuit court for the county of Alpena in chancery. The bill sought to enjoin the defendant from removing further rail from the branch, and to compel it to replace those already removed, and to accept the shipments offered by complainant. While the above cause was pending, complaint was filed with this commission. At the hearing the defendant offered the record of the proceedings in the Alpena circuit court in chancery as a bar to the proceedings herein. The decree in the chancery case had not at that time been entered, and has subsequently been added to this record. The decree dismisses the bill of complaint, and provides in terms that it is 'without prejudice to complainant to file its petition for relief with the Michigan railroad commission.' Even as between courts bound by the strict rules of legal procedure, such a decree could not be effectually pleaded in bar of some subsequent action, unless it appeared

that the latter case was identical with the former case upon the facts presented, and that the power of the courts to grant relief was the same in both instances. Story, Equity Pleadings, 793; *County of Mobile* v. *Kimball*, 102 U. S. 691; *Newberry* v. *Ruffin*, 102 Va. 73 [45 S. E. 733].

"Numerous cases could be cited giving far greater scope to the words 'without prejudice' than is contended for them here. The court, in the case of *O'Keefe* v. *Irvington Co.*, 87 Md. 199 [39 Atl. 428], among numerous citations, quoted approvingly from *Northern Pacific R. Co.* v. *Railway Co.* [C. C.], 47 Fed. 536, to the effect that, when the qualifying words 'without prejudice' are used, the effect is 'like a nonsuit in a common-law action.' We are therefore clearly of the opinion that the decree in the chancery court can in no manner be said to be a bar to this proceeding, and, however familiar (similar) the two proceedings may be upon the precise facts involved, there is a marked dissimilarity in the powers of the court and this commission, in the application of a remedy to any wrong which the facts may disclose.

"Prior to action by this commission in the premises, the power of the chancery court was, and still is, limited to the enforcement of those clear legal or equitable rights embraced within the general equity jurisdiction of the court. Needless to say, this jurisdiction does not comprehend the power to decree regulations that are administrative in character, such as the legislature has delegated through the act creating the Michigan railroad commission. While the courts, through a bill in chancery, have certain jurisdiction over the orders of the commission, they may not, in the first instance, pass upon the reasonableness of maximum rates of charges for the transportation of property, or upon the innumerable questions growing out of the rate-making power, and the preventing of discrimination.

"Section 22 of Act No. 300 of the Public Acts of 1909,[1] being an act which, among other things, defines the powers and duties of the Michigan railroad commission, provides:

---

[1] 3 How. Stat. [2d Ed.] § 6524 *et seq.*

" 'Upon complaint in writing of any person, firm, or corporation or association, or of any mercantile, agricultural or manufacturing society, or of any body politic or municipal organization, that any of the rates, fares, charges or classifications, or any joint rate or rates are in any respect unreasonable or unjustly discriminatory, or that any regulation or practice whatsoever affecting the transportation of persons or property or any service in connection therewith, is in any respect unreasonable or unjustly discriminatory, or that any service is inadequate, the commission shall notify the common carrier complained of. * * * '

"After providing for hearing and investigation, the section further provides:

" 'If, upon such investigation, the rate or rates, joint rate or rates, fares, charges or classifications, regulation, practice or service complained of shall be found to be unreasonable, inadequate or unjustly discriminatory, the commission shall have power to and it shall determine and by order fix and order substituted therefor, such rate or rates, joint rate or rates, fares and charges, as is or are just and reasonable, and which shall be the maximum to be charged in the future, and such classifications, regulation, practice or service as is or are just, reasonable and adequate, and which shall be imposed and followed or service rendered in future in lieu of that found to be unreasonable, inadequate or unjustly discriminatory, and in either case the commission shall make an order that the common carrier cease and desist from such violation, and shall conform to the regulation and practice so prescribed.'

"None of the foregoing powers are committed to the jurisdiction of the chancery court. That court, in this controversy, exercised its powers in determining the property rights of the parties. This commission exercises its powers in determining the reasonableness or unreasonableness of the discrimination, regulation, and practices complained of.

"In seeking for guidance in determining the extent and limitation of its powers, this commission naturally looks to the decisions of the interstate commerce commission. The act to regulate commerce, under which that body exercises its authority, by its terms limits the commission to the prescribing of just and reasonable rates, but without the broad language

of the Michigan statute. The interstate commerce commission has said, speaking of its powers:

" 'We think that the commission has full power to remove unjust discrimination resulting from a rule or a practice as well as that resulting from a rate.' *Ouerbacker Coffee Co.* v. *Railway Co.*, 18 Interst. Com. Com'n R. 570.'

"In another case they have very truly said:

" 'There is no more insidious or effective way by which a carrier may discriminate between its shippers than through a regulation or practice that denies to them the equal enjoyment of its facilities.' *Rail & River Coal Co.* v. *Railroad Co.*, 14 Interst. Com. Com'n R. 86.'

"As a few instances of what the interstate commerce commission has declared to be discrimination, it is of interest to note the following:

"The practice of a railroad allowing more free time for the unloading of cars in one city than in another. *Lynah & Read* v. *Railroad Co.*, 18 Interst. Com. Com'n R. 38.

"For a railroad to build and rent an elevator for a nominal rental to an individual in one city, while it requires the individuals of a neighboring city to provide its own. *Brook-Rauch Mill & Elevator Co.* v. *Railway Co.*, 17 Interst. Com. Com'n R. 158.

"For a railroad to bear a part or all of a cartage charge upon freight brought to it by distant shippers, while refusing to bear no (any) part of the cartage charge from shippers near at hand. *Stone & Carten* v. *Railway Co.*, 3 Interst. Com. Com'n R. 60.

"The first chairman of the interstate commerce commission, the distinguished Thomas M. Cooley, speaking for the commission in the case of *Crews* v. *Railroad Co.*, 1 Interst. Com. Com'n R. 426, said:

" 'Discrimination must consist in the doing for or allowing to one party or place what is denied to another.'

"It will hardly be contended that the action of the defendant in placing its rails upon the ties and right of way of the Churchill Lumber Company, and upon the right of way and ties of other lumber companies, and granting the use of its railway facilities as they have use for them, and then ruthlessly tearing out the rails and refusing the same facilities to complain-

ant, does not come clearly within this definition. In the exercise of its franchise it is the duty of a railway company to so adjust its tariffs and so regulate its practices that unjust discrimination shall not result. The defendant, therefore, may not refuse to one shipper the facilities which it grants freely to another under conditions which are practically identical.

"It is the opinion of the commission that the defendant company should relay the rails removed by it from the so-called 'Tubbs Branch' or 'Martindale Spur,' and accept for transportation on said branch the shipments tendered by complainant; that said tracks should be relaid on or before 30 days from this date, and an order to this effect will be entered.

"C. L. GLASGOW, Chairman.
"G. W. DICKINSON, Commissioner.
"LAWTON T. HEMANS, Commissioner."

"Order.

"STATE OF MICHIGAN.
"Before the Michigan Railroad Commission.
"Session of the Michigan Railroad Commission held at its offices in the city of Lansing on the 3d day of August, A. D. 1911.
"Fletcher Paper Company, Complainant, v. Detroit & Mackinac Railway Co., Defendant. D—163.
"This matter having come on to be heard upon complaint and answer, and proofs having been taken before the commission, and the said proofs and briefs of the respective parties having been duly considered, it is ordered that the said defendant, the Detroit & Mackinac Railway Company, be and is hereby required, on or before the expiration of thirty days from the date hereof, to relay the rails removed by it from the so-called 'Tubbs Branch' or 'Martindale Spur,' and to accept the shipments offered to it on said branch by the complainant, the Fletcher Paper Company, and to grant to the said Fletcher Paper Company the same facilities heretofore granted by said Detroit & Mackinac Railway Company to the Churchill Lumber Company, and to such other person, firm, or corporation as have been granted rights

of shipment over said 'Tubbs Branch' or 'Martindale Spur.'

"C. L. GLASGOW, Chairman.
"G. W. DICKINSON, Commissioner.
"LAWTON T. HEMANS, Commissioner."

The hearing of the petition of the Fletcher Paper Company before the railroad commission was had March 24, 1911. The order in question was made August 3, 1911. It was duly served on respondent railroad company August 8, 1911. On September 2, 1911, the railroad company filed its bill of complaint in the circuit court for the county of Wayne in chancery, to review, vacate, and annul said order, which cause was pending at the time this mandamus proceeding was instituted, and is still pending in said court.

Respondent contends that the instant case ought not to be considered and passed upon by this court, for the reason that it had no opportunity to present its proofs at the hearing before the railroad commission, and claims that on said hearing it relied upon its contention that the decree of the Alpena circuit court in chancery dismissing the bill of complaint of the Fletcher Paper Company against respondent was *res adjudicata* and therefore a bar to the proceedings before the railroad commission, and that it was understood at the time, and by correspondence later, between it and the said commission that, if that question was decided adversely to it, opportunity would be given to introduce evidence in this proceeding, should it so desire, and that it received no such notice; that the first knowledge it had of the decision by the commission was the service upon it of a copy of the order of August 3d.

The record indicates that such an understanding was had; but it is denied in the brief of counsel for petitioner that no notice or opportunity was given to

178 MICH.—16.

respondent to furnish proofs in the case, and no such claim appears to have been made to the commission after the order was promulgated and before the bill to review the order was filed. The respondent at no time has presented any statement of the nature of the testimony it at that time desired to introduce, or any statement of merits which it could show by such proofs, or that in fact it expected and desired to put in further or other proofs and exhibits than are shown by the testimony returned in the record.

Further, the answer of respondent admits all of the material facts charged against it in the petition upon which petitioner relies for the relief asked of the railroad commission. Admitting the truth of its contention, it is apparent that no injury to defendant has been done in the neglect to notify it according to agreement.

The further claim is made by respondent that the several allegations in its answer to this petition in this case must be accepted as true because it is not traversed or denied and no issues of fact are framed. This answer is voluminous, and includes the pleadings and testimony in the proceedings before the railroad commission, the bill of complaint in the Alpena case and the answer thereto, the bill of complaint filed in the Wayne circuit court, and also the opinion of the Alpena circuit judge. It is claimed by petitioner that these matters are irrelevant and immaterial, and that issue need not be joined upon such matters. This court has held that improper and irrelevant allegations contained in an answer of a respondent to an order to show cause will not be stricken out upon motion, and has pointed out the practice to be to call the attention of the court to such matters. *Erikson* v. *Alpena Circuit Judge,* 138 Mich. 103 (101 N. W. 63).

In the instant case that practice has been followed, and we are of opinion that the bill of complaint in the

Wayne circuit court and the opinion of the Alpena circuit judge are immaterial and require no consideration, and that the transcript of the testimony taken before the railroad commission on the hearing of the petition for the order of August 3, 1911, gives all the information necessary upon this hearing relative to the bill of complaint and answer in the Alpena chancery case, and that it was not necessary to embody those records in the answer of respondent.

The pleadings in the instant case, the pleadings and testimony returned in the matter of the application of the Fletcher Paper Company against respondent for an order to enforce the order of August 3, 1911, pending its review, are all that this court needs to consider. It was therefore not necessary to frame issues upon the respondent's answer.

We are not called upon to consider and determine the merits of the controversy between the Fletcher Paper Company and respondent railway company upon the order of August 3, 1911. Such questions are involved in the case now pending before the circuit court for the county of Wayne in chancery, wherein the respondent railway company seeks to review, annul, and set aside said order. The sole question before this court in this proceeding is whether the order of the railroad commission shall take effect and become operative pending the hearing and determination of that chancery cause.

The Michigan railroad commission assumed jurisdiction and passed upon the matters in controversy between the parties in the proceedings then before it, and its final determination resulted in the order in question, assuming and claiming to act under and by virtue of the power and authority granted to it under section 22 of the railroad commission law.

It will not be necessary to quote the provisions of that section at length. The commission is authorized to hear all complaints relative to rates, joint rates,

charges, or classifications that are charged to be in any respect unreasonable or unjustly discriminatory, or "any regulation or practice whatsoever affecting the transportation of persons or property, or any service in connection therewith which is in any respect unreasonable or unjustly discriminatory," and, if on investigation such charges are found to be true, it is authorized to determine and by order fix such rates and charges as are just and reasonable and such regulation, practice, or service as is just, reasonable, and adequate, "and which shall be imposed and followed or service rendered in future in lieu of that found to be unreasonable, inadequate or unjustly discriminatory, and in either case the commission shall make an order that the common carrier cease and desist from such violation and shall conform to the regulation and practice so prescribed."

Relative to an order made by this commission this court has said:

"Its findings are not conclusive, but have the effect of establishing *prima facie* that the rates considered are reasonable and just and therefore lawful, or are unreasonable and unjust and unlawful. Its orders stand until modified or set aside by it or by the courts. * * * Presumptively, the findings and orders of the commission are right. If attacked, the complainant has the burden of showing 'by clear and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable, as the case may be.'" *Detroit, etc., R. Co.* v. *Railroad Commission,* 171 Mich. 335, 346 (137 N. W. 329, 333).

The commission, in its opinion, said: "This commission exercises its powers in determining the reasonableness or unreasonableness of the discrimination, regulation, and practices complained of" —and found and determined that the practices of the respondent were unjust and discriminatory in refusing to the Fletcher Paper Company the facilities

which it granted freely to others under conditions practically identical.

The contention of respondent, reduced to its lowest terms, is that the order in question is confiscatory. This is often, if not in fact generally, one of the objections of the common carrier railroad company in contesting the rate fixed in ordinary rate cases, as was contended in *Detroit, etc., R. Co.* v. *Railroad Commission, supra.*

The petitioner in the instant case before the railroad commission offered, and upon this hearing before this court keeps such offer good, to indemnify respondent for all costs and expenses incurred in relaying the track taken up by it, with interest, and to pay all rates that may be fixed or charged by the railway company and approved by the commission, in case this order is vacated and set aside by the Wayne circuit court in chancery, or by this court, if an appeal is taken. This indemnity would save respondent harmless from any possible loss in complying with the order, and save petitioner from claimed irreparable damage to 21,000,000 feet of forest products during the probable term of years occupied in this litigation.

It has been held by this court that an order of the railroad commission is enforceable by mandamus, although a proceeding in equity to review it is pending. *Michigan Railroad Commission* v. *Railroad Co.,* 159 Mich. 580 (124 N. W. 564).

This order is *prima facie* not unreasonable. There is no question but that the legislative intent clearly expressed in this statute was that the orders of the commission should be and continue in force during all subsequent proceedings until modified or set aside by the commission or by the courts.

The statute provides a remedy by mandamus to enforce the orders of the commission, and this court

has granted such writs. Upon the facts presented, the writ should be granted in this case.

Upon furnishing bond by the petitioner before the railroad commission, the Fletcher Paper Company, in the penal sum of $10,000 to indemnify respondent in manner and form as herein stated, with two sureties to be agreed upon between the parties, or approved by the clerk of this court, a writ of mandamus will issue as prayed.

STEERE, C. J., and MOORE and BROOKE, JJ., concurred with McALVAY, J.

OSTRANDER, J. (dissenting in part). It is provided in section 22 (a) of Act No. 300, Public Acts of 1909,[1] that an order of the railroad commission shall of its own force take effect and become operative 20 days after the service thereof. In section 47 of the act it is provided that the commission may compel compliance "with the orders of the commission by proceedings in mandamus, injunction or by other appropriate civil remedies."

Notwithstanding these provisions of the statute, whether a writ of mandamus shall be granted in a particular case is a judicial question, and the fact that the railroad commission has made an order is not alone sufficient to require the court to issue the writ. The court may still inquire whether the writ ought to issue. The order of the commission which it is sought to compel the respondent to obey requires respondent to relay a portion of a spur line, to operate it, and accept shipments over it offered by the Fletcher Paper Company, granting to said company the same facilities heretofore granted by it to the Churchill Lumber Company and such other persons as have been granted rights of shipment over said spur.

---

[1] 3 How. Stat. [2d Ed.] § 6524 et seq.

It is provided in the statute, section 22 *(a):*

"Upon complaint in writing of any person, firm or corporation or association, or of any mercantile, agricultural or manufacturing society, or of any body politic or municipal organization, that any of the rates, fares, charges or classifications, or any joint rate or rates, are in any respect unreasonable or unjustly discriminatory, or that any regulation or practice whatsoever affecting the transportation of persons or property or any service in connection therewith, is in any respect unreasonable or unjustly discriminatory, or that any service is inadequate, the commission shall notify the common carrier complained of that complaint has been made and shall furnish a copy of the said complaint with said notice, and twenty days after such notice has been given the commission may proceed to investigate the same as hereinafter provided. Before proceeding to make the investigation, the commission shall give the said common carrier and the complainants at least ten days' notice of the time and place when and where such matters will be considered and determined, and said parties shall be entitled to be heard and shall have process to enforce the attendance of witnesses. Such hearings may be continued from time to time in the discretion of the commission. If, upon such investigation, the rate or rates, joint rate or rates, fares, charges or classifications, regulation, practice or service complained of shall be found to be unreasonable, inadequate or unjustly discriminatory, the commission shall have power to and it shall determine and by order fix and order substituted therefor, such rate or rates, joint rate or rates, fares and charges, as is or are just and reasonable, and which shall be the maximum to be charged in the future, and such classifications, regulation, practice or service as is or are just, reasonable and adequate, and which shall be imposed and followed or service rendered in future in lieu of that found to be unreasonable, inadequate or unjustly discriminatory, and in either case the commission shall make an order that the common carrier cease and desist from such violation, and shall conform to the regulation and practice so prescribed."

We have not before us the complaint made to the railroad commission by the Fletcher Paper Company; but, from the opinion delivered by the commission, which is set out in the opinion of my Brother MC-ALVAY, the facts involved may be understood. It is made evident by that opinion that the railroad commission considered that its powers under the act extend so far as to correct a rule or practice of the railroad company resulting in unjust discrimination, and that it determined that the conduct of respondent in discontinuing business over the particular spur was a practice resulting in unjust discrimination. It is further made evident that, in determining that the Fletcher Paper Company was denied facilities afforded other shippers, comparison was made, not between facilities afforded that company and other shippers situated on the particular spur, but between facilities afforded that company and those afforded shippers on other spur tracks which the respondent continued to operate. As the opinion is understood, it denies to respondent the right, under the circumstances disclosed, to discontinue operations over and to abandon the spur, or branch. And this right is denied, apparently, because, having constructed the spur, under the circumstances stated, and having in times past accepted freight thereon for transportation from persons other than the one with whom the original agreement to construct and operate the line was made, and because it operates other spurs, or branches, it may not withdraw from the enterprise so long as its services are desired by any person, or so long, at least, as some person offers a fair amount of freight for shipment. So long as the respondent was operating the spur, accepting thereon and transporting over it freight for those who offered it, and so long as it published tariffs affecting such service, it was undoubtedly, as to such operations, within the scope of the act in question, and this we

held in *Detroit, etc., R. Co.* v. *Railroad Commission,* 171 Mich. 335 (137 N. W. 329). But whether the Michigan railroad commission has power under the statute to require respondent to continue to operate such a spur, or branch, against its will, and in face of its efforts to abandon it, is quite a different question. It is a question which we assume is presented in the pending chancery proceeding to set aside the order which in this proceeding is sought to be enforced. It need not be answered now. But, if it is very doubtful, as I think it is, whether the order, in its entirety, is one which the railroad commission had the authority to make, the doubt may be and should be taken into account in determining whether the writ of mandamus should be granted to enforce the order.

It sufficiently appears that the attempted abandonment of the spur and its operation was without notice to the Fletcher Paper Company, and that company had delivered, in the usual manner and in the only manner that forest products of like nature could be delivered for shipment, a considerable quantity of logs for transportation by respondent. If other goods of like value had been delivered and received by the respondent for shipment, it would be the duty of the respondent, I think, to transport them before abandoning the spur. As to such goods and the shippers, the relation of the respondent would be that of a common carrier of goods. While this relation continued, it would be subject to the provisions of the act. The rule ought to be the same with respect to such logs as had been delivered on the line of the road in the customary manner. They had not been received and receipted for by respondent as ordinarily freight tendered for shipment is received and receipted for by a railroad company; but according to usage they had been delivered along the line of the road for transportation, and had been theretofore,

upon such delivery, transported. Whether it had or did not have greater power in the premises, I am satisfied that the Michigan railroad commission· had power to order respondent to continue and complete the transportation of such logs, and to that extent compliance with the order which was made should be compelled by the writ of mandamus. The order of this court should be so limited.

With respect to other points presented for decision, I concur in what has been said by Mr. Justice MC-ALVAY.

STONE, J., concurred with OSTRANDER, J. KUHN and BIRD, JJ., did not sit.