WILLIAM J. RAUHUT and ELIZABETH RAUHUT, *his wife,*

*vs.*

JAMES R. O'DONNELL and MARY T. O'DONNELL, his wife, MAY C. ZECHMAN, also known as MAE C. ZECHMAN, and CHARLES HARRY ZECHMAN, her husband.

*New Castle, April 18, 1944.*

*William Thomas Knowles* and *Bayard W. Allmond,* of the firm of Knowles & Allmond, for complainants.

*Victor J. Colombo,* for defendants.

HARRINGTON, Chancellor: Prior to June 10th, 1914, a double brick house, with one partition wall, stood on two adjoining lots on the East side of Rodney Street, in the City of Wilmington, immediately north of its intersection with Sycamore Street. Both lots were rectangular in shape, and their northerly and southerly lines were parallel with Sycamore Street. The house on the Northern lot was designated as No. 516 South Rodney Street, and the house on the southern lot was designated as No. 518. Both lots were owned by Charles Harry Zechman, one of the defendants, and the partition wall between the houses was approximately nine inches thick. On June 10th, 1914, Zechman conveyed the northern lot to one Thomas F. O'Donnell. The property so conveyed was described as a certain lot, piece or parcel of land, situate in the City of Wilmington, County of New Castle, in the State of Delaware, and more particularly described as follows:

"Beginning at a point on the Easterly side of Rodney Street at the distance of twenty-five feet Northerly from the Northerly side of Sycamore Street; thence Easterly and parallel with said Sycamore Street one hundred feet to a corner; thence Northerly, parallel with Rodney Street, twenty-five feet to a corner; thence Westerly, parallel with said Sycamore Street and the first described line, one hundred feet to the aforesaid Easterly line of Rodney Street; and thence thereby Southerly twenty-five feet to the place of beginning."

Thomas F. O'Donnell died intestate in 1935, leaving a son, James R. O'Donnell, and a daughter, May C. Zechman, wife of the said Charles Harry Zechman, as his only heirs at law, and to whom his real estate descended in fee simple.

On September 29th, 1937, James R. O'Donnell and Mary T. O'Donnell, his wife, and May C. Zechman and Charles Harry Zechman, her husband, all of whom were described as owners, agreed, in writing, to sell, and the complainants agreed to purchase "that certain lot or parcel of land with the buildings thereon erected, situate in the City of Wilmington and known as #516 So. Rodney Street."

On November 10th, 1937, James R. O'Donnell and his wife, and May C. Zechman and her husband executed and delivered a deed to the complainants, which described the property conveyed as:

"All that certain lot, piece or parcel of land with the buildings thereon erected, known as No. 516 South Rodney Street, situate in the City of Wilmington, County of New Castle and State of Delaware, more particularly bounded and described as follows, to wit:"

The same particular description, with the same beginning point, that appeared in the deed to Thomas F. O'Donnell in 1914 was then inserted in the deed to William J. Rauhut and Elizabeth Rauhut, his wife, the said complainants.

On or about November 15th, 1937, the said complainants agreed to sell the property designated as No. 516 South Rodney Street, but could not give a proper title because a survey of the lot, made by the City of Wilmington, disclosed that the deed to them from the O'Donnells and Zechmans in 1935 did not include any part of the partition wall between the houses erected on No. 516 and No. 518 South Rodney Street, or any part of the land under that wall. It appeared from that survey that a point "on the Easterly side of Rodney Street at the distance of twenty-five feet Northerly from the Northerly side of Sycamore Street" would be on the northern side of the partition wall between the two houses.

The complainants claim that by their agreement with James R. O'Donnell and Mary T. O'Donnell, his wife, and May C. Zechman and Charles Harry Zechman, her husband, they were to sell and convey the "lot * * * now known as No. 516 South Rodney Street", which would cover the whole of it, including the portion under the Northern half of the partition wall of the house erected thereon; that the deed delivered to them did not comply with that contract, and they accordingly seek to have that mistake corrected; but they do not allege any error in the deed from Charles Harry Zechman to Thomas F. O'Donnell in 1914.

In corroboration of their claim that the deed to them did not convey what the defendants had agreed to sell and what they had expected to purchase, the complainants also point out that when the contract of sale was made the railing which divided the front porches of the houses, was approximately in line with the partition wall between them; that a metal ornament in the cornice, in front, was also at the top of the division wall, and that one of the posts supporting the back porches, was in line with that wall.

Clear and convincing proof of a mistake is necessary to sustain a bill to reform a written instrument (*Colvocoresses v. W. S. Wasserman & Co.,* 26 *Del. Ch.* 333, 28 *A.* 2d 588; *Home Life Ins. Co. v. McCarns,* 25 *Del. Ch.* 220, 16 *A.* 2d 587) ; but when the contract of sale is read with the proven facts, the only reasonable conclusion is that the defendants agreed to sell, and the complainants agreed to purchase, the whole of lot 516. That would include the land under the northern half of the partition wall of the house erected thereon, as well as the land north of a line running through the middle of that wall and extending to the front and back of the lot; but the deed conveyed less.

The strip of land in dispute is 100 feet by approximately $4\frac{1}{2}$ inches; and both reformation of the deed on the ground of a material and mutual mistake (*Colvocoresses v. W. S. Wasserman & Co., supra; Home Life Ins. Co. v. McCarns, supra*), and specific performance are sought. The latter remedy is essential to complete relief under the complainants' bill, and in an appropriate case can be had in the same proceeding. 3 *Pomeroy's Eq. Jur.,* (*5th Ed.*) § 682; 6 *Pomeroy Eq. Rem.* § 683; 20 *Encyc. Pl. & Pr.* 396; *O'Keefe v. Irvington Real Est. Co.,* 87 *Md.* 196, 39 *A.* 428. A court of equity will not reform a deed unless some real relief can be had under the corrected instrument. *Thompson, Rec., v. Phoenix Ins. Co.,* (*C.C.*) 25 *F.* 296.

It is not claimed that the O'Donnell heirs ever had title

to the property in dispute or that they could convey it should the deeds be reformed. See 20 *Ency. Pl. & Pr.* 485; *Jahnke v. Seydel,* 178 *Iowa* 363, 159 *N.W.* 986; *Fry Specif. Perf.,* §§ 994, 995. The complainants point out, however, that Zechman is the legal owner of that strip of land, and, should the court so direct, could convey in accordance with the contract of sale, to which both he and his wife were parties. He did not know until 1941 that no title to any part of the partition wall or to any of the land under it had passed to the complainants.

Zechman claims that he executed the contract and deed merely as the husband of one of the owners of the property, and that it would be wholly unfair to compel him to convey a part of his own adjoining lot in order to make good the contract of sale; but as between him and the complainants, the equities seem to preponderate in their favor. It is difficult to believe that they would have agreed to purchase a lot which did not include the whole of the house erected thereon. Moreover, the defendants admit in their answer that the division wall between the houses is a party wall, and that a mistake was made in not conveying to the complainants a one-half part of it, as well as the land thereunder, and offer to correct that mistake; their admission goes no further. No other contentions were made. The proven facts seem to require both a reformation of the deed and an order compelling the defendants to convey to the complainants so as to make good the error in the deed.

A decree will be entered accordingly